1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**EASTERN DISTRICT OF CALIFORNIA**

8

9 **GARY WILLIS,**                         )        **CIV-F-04-6542 AWI LJO**
                                        )
10              **Plaintiff,**              )
                                        )        **ORDER RE: DEFENDANTS'**
11        **v.**                            )        **MOTIONS TO DISMISS**
                                        )
12 **JOSEPH MULLINS et al.,**                )
                                        )
13              **Defendants,**             )
                                        )
14                                      )
                                        )
15 _____    )

16

17        This case is before the court on two separate motions for partial dismissal pursuant to

18 Fed. R. Civ. Proc. 12(b)(6).  Plaintiff opposes both motions.  Oral argument was held on March

19 28, 2005.

20

21                                **I. History**

22        This is a case in which the parties have provided essentially no background information.

23 Gary Willis ("Plaintiff") was a registered occupant of a motel on March 27, 1996.  That day, a

24 Kern County Narcotics Enforcement Team entered the motel room, searched it, and arrested

25 Plaintiff.  The team consisted of four members: Bakersfield Police Officer Joseph Mullins;

26 Bakersfield Police Officer Silvius; Kern County Deputy Sheriff Hood; and California State

27 Parole Officer Diane Mora.  Joseph Mullins told Diane Mora that Plaintiff was on parole; Diane

28 Mora arranged for the team of officers to search the motel room.  Plaintiff contends he was not

1  on parole.  Based on evidence collected from the search, Plaintiff was ultimately convicted of a

2  felony and spent over six years in state prison.  The California Supreme Court overturned

3  Plaintiff's conviction on June 3, 2002. See <u>People v. Willis</u>, 28 Cal. 4th 22 (Cal. 2002).   Plaintiff

4  was released on August 31, 2002.  Plaintiff first filed this suit in the Central District of California

5  on May 3, 2004.  He filed his amended complaint on September 16, 2004; that is the operative

6  complaint. Transferred File, Doc. 14.  At a hearing on November 8, 2004, the trial judge ordered

7  the case transferred to the Eastern District of California due to improper venue.

8  In the amended complaint, the only concrete factual allegations are as follows:

9  16. On or about March 27, 1996, while working for the Bakersfield Police Dep't.
10  As part of the Kern County Narcotics Enforcement Team, Bakersfield police officer
Joseph Mullins contacted both state parole officer Dane Mora, of the California Dep't of
Corrections (CDC), Bakersfield police officer Silvius, and Kern County deputy sheriff
11  Hood. Mullins falsely told Mora plaintiff was on active parole, Mora told Mullins,
Silvius, and Hood and directed the latter three to assist her with the arrest of, and to arrest
12  [sic], plaintiff. All four then went to a motel at which plaintiff was a registered guest and
[searched the room, searched him, and arrested him, all without warrant].
13  17. As a result thereof, plaintiff was falsely convicted of a felon [sic], and then
spent approximately 6.5 years in state prison, until the California Supreme Court on June
14  3, 2002 decreed plaintiff's release, whereafter plaintiff was not released until August,
2002."
15  Transferred File, Doc. 14, at 7:11-8:5.

16  The named defendants in the case are the four officers who took part in the March 27,

17  1996 arrest; former California Governor Pete Wilson; current California Governor Arnold

18  Schwarzenegger; former CDC Director C.A. Terhune; former CDC Director Richard Rimmer;

19  current CDC Director Jeanne Woodford; the City of Bakersfield; Mayor of Bakersfield Harvey

20  Hall; Bakersfield City Council Member Irma Carson; Bakersfield City Council Member Sue

21  Benham; Bakersfield City Council Member Mike Maggard; Bakersfield City Council Member

22  David Couch; Bakersfield City Council Member Harold Hanson; Bakersfield City Council

23  Member Jacquie Sullivan; and Bakersfield City Council Member Mark Salvaggio.  Defendants

24  Wilson, Schwarzenegger, Terhune, Rimmer, Woodford, and Mora (collectively "State

25  Defendants") are represented by the Attorney General of the State of California.  Defendants City

26  of Bakersfield, Hall, Carson, Benham, Maggard, Couch, Hanson, Sullivan, Salvaggio, Mullins,

27  and Silvius (collectively "City Defendants") has their legal defense coordinated by the

28  Bakersfield Office of the City Attorney.  As a subgroup, Defendants Hall, Carson, Benham,

1    Maggard, Couch, Hanson, Sullivan, and Salvaggio will collectively be referred to as the
2    "Bakersfield Officials". Plaintiff sues all persons in both their official and individual capacities.
3    At oral argument on March 28, 2005, Plaintiff informed the court that Deputy Sheriff Hood has
4    not yet been served in the suit as he has retired from the Kern County Sheriff's Department and is
5    spending his time traveling the country in a recreational vehicle. As he has not yet been served,
6    Deputy Sheriff Hood is not considered a Defendant in this case.
7    	The amended complaint contains nine causes of action: (1) monetary relief under 42
8    U.S.C. § 1983 for violation of Fourth and Fourteenth Amendment rights; (2) monetary relief
9    under 42 U.S.C. § 1983 for conspiracy to commit count one; (3) monetary relief under 42 U.S.C.
10   § 1983 for a policy, practice, procedure, and custom of committing Fourth and Fourteenth
11   Amendment violations; (4) monetary relief under 42 U.S.C. § 1983 against [the Bakersfield
12   Officials] for the City's policy of indemnifying police officers in civil rights cases; (5)
13   declaratory relief under 28 U.S.C. § 2201 finding that there is a custom, pattern and practice of
14   Fourth and Fourteenth Amendment violations by police in California; (6) injunctive relief under
15   28 U.S.C. § 1651 preventing all Defendants from engaging in violations of the Fourth and
16   Fourteenth Amendment; (7) monetary relief under RICO for loss of actual employment and
17   employment opportunities; (8) monetary relief for conspiracy to commit count seven; and (9)
18   monetary relief under Cal. Civ. Code § 52.1 for violation of Fourth and Fourteenth Amendment
19   rights. With most of Plaintiff's counts, it is unclear exactly which Defendants against whom
20   relief is sought. In addition, Plaintiff seeks to certify a class whose members have been harmed
21   by being subjected to "bogus parole entry, search, seizure, and/or arrest, and being set up on false
22   criminal charges based on bogus claims they are [sic] on parole , when in fact there were not on
23   parole." See Transferred File, Doc. 14.
24   	City Defendants filed a motion to dismiss on December 23, 2004. Doc. 5. Plaintiff filed
25   an opposition to City Defendants' motion on February 1, 2005. Doc. 14. City Defendants then
26   filed a supplemental memorandum of points and authorities on February 4, 2005 as part of an ex
27   parte application for continuance of the hearing. Doc. 18, Part 3. City Defendants filed a reply
28   lacking an electronic signature on February 28, 2005. Doc. 23. City Defendants then filed an

1   amended reply containing a valid signature on March 3, 2005. Doc. 25.

2       Separately, the State Defendants filed a motion to dismiss on January 3, 2005. Doc. 7.

3   Plaintiff filed an opposition to State Defendants' motion on January 24, 2005. Doc. 10.  State

4   Defendants filed a reply on January 31, 2005. Doc. 12.  State Defendants filed an amended

5   motion to dismiss on February 4, 2005, with an amended memorandum of points and authorities.

6   Doc. 17.  The two separate motions were delayed several times, and a joint hearing was held on

7   March 28, 2005.

8

9                              **II. Legal Standards**

10      In considering a motion to dismiss under the Federal Rules of Civil Procedure 12(b), the

11  court must accept as true the allegations of the complaint in question. Hospital Bldg. Co. v. Rex

12  Hospital Trustees, 425 U.S. 738, 740 (1976).  The court will construe the pleading in the light

13  most favorable to the party opposing the motion and resolve all doubts in the pleader's favor.

14  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  A motion to dismiss for failure to state a claim

15  should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in

16  support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S.

17  69, 73 (1984), (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v.

18  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  Absent unusual

19  circumstances, dismissal without leave to amend is improper unless it is clear that the complaint

20  could not be saved by amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

21      When a defendant challenges the legal sufficiency of a complaint, the court's review is

22  limited to the complaint. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  As

23  a general matter, a district court may not consider any material outside of the pleadings when

24  ruling on a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001);

25  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  Material properly submitted as part of the

26  complaint and materials the court may take judicial notice of may be considered. Lee v. City of

27  Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If the parties present the court with any other

28  evidence and the court considers it, the court must converting the Rule 12(b)(6) motion into a

1   motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); <u>Anderson v. Angelone</u>, 86 F.3d 932,

2   934-35 (9th Cir. 1996).

3

4                                  **III. Discussion**

5          At oral argument on March 28, 2005, the court invited the Defendants to clarify exactly

6   which of Plaintiff's claims they were seeking to have dismissed.  City Defendants stated that

7   their motion was directed at the second, third, fourth, seventh, eighth, and ninth causes of

8   actions.[1]  In addition, they seek to have specific Defendants dismissed from suit due to

9   respondeat superior, qualified immunity, and an argument that suit is improper in the official

10  capacity.  State Defendants did not state which claims they hoped to have dismissed.  Reference

11  to the amended notice of motion to dismiss (Doc. 17) shows that State Defendants seek dismissal

12  of the third, seventh, eighth, and ninth causes of action and seek to have claims one through four

13  dismissed due to statute of limitations.  In addition, they seek to have specific Defendants

14  dismissed from suit due to respondeat superior, qualified immunity, and sovereign immunity.

15         Neither State Defendants nor City Defendants assert that claim one fails due to

16  insufficient factual allegations.  State Defendants do not challenge the second claim on the basis

17  that of insufficient factual allegations.  Claim four is plead against the Bakersfield Officials only;

18  no State Defendants are named.  Neither State Defendants nor City Defendants seek to have the

19  fifth and sixth causes of action dismissed.  Plaintiff clarified that he has not yet made a motion

20  for class certification, but is expecting to do so in the future.

21

22  **A. Sovereign Immunity**

23         State Defendants argue that "Plaintiff's lawsuit against Defendants for damages in their

24  official capacities contravenes the Eleventh Amendment and should be dismissed." Doc. 8, at

25  8:19-20.  Regarding monetary damages for Section 1983 suits, "a suit against a state official in

26

27         [1]Though unstated at oral argument, City Defendants seek to have claims one, two, three,

28  and four dismissed due to statute of limitations.

                                       5

his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citations omitted). Plaintiff now "agrees that there is Eleventh Amendment immunity from damages against state officers in their official capacities." Doc. 10, at 19:12-13. Plaintiff has conceded the issue and does not appear to oppose this part of the State Defendants' motion. Consequently, State Defendants are dismissed in their official capacities on all claims.

**B. Statute of Limitations**

At oral argument, Plaintiff objected to the City Defendants' supplemental memorandum of points and authorities (Doc. 18, Part 3) and claimed to have never received the State Defendants' amended memorandum of points and authorities (Doc. 17, Part 2). Both of these memoranda argued that the applicable statute of limitations barred Plaintiff's Section 1983 claims. Plaintiff's objection to the City Defendants' supplemental memorandum is well taken. The memorandum was part of an ex parte application for continuance of the hearing. There is no indication that the memorandum was ever served on Plaintiff.[2]  As for Plaintiff's claim that the State Defendants did not serve their amended motion and attached memorandum, the record shows that both documents were properly served by U.S. Mail on Joseph Reichmann, Jr. of Yagman, Yagman, Reichmann & Bloomfield. At oral argument, Plaintiff offered to submit a memorandum entitled "Plaintiff's Response to Bakersfield Defendants' Supplemental Submission Regarding Statute of Limitations Affirmative Defense" to address these issues which were not raised until after his oppositions were filed. Having reviewed this new document, the court finds it unnecessary to have it officially filed into the record as the court has already undertaken an independent analysis of the issue, rejecting City and State Defendants' argument.

Plaintiff's criminal conviction was overturned on June 3, 2002. His Section 1983 cause

---

[2]City Defendants' counsel, Ovidio Oviedo, Jr., is admonished that including substantive argument going to the merits of the motion in an ex parte request for continuance  without serving the opposing party is improper.

6

1  of action accrued on that date.  Cal. Civ. Proc. Code § 352.1 provides that if an individual is

2  "imprisoned on a criminal charge...the time of that disability is not a part of the time limited for

3  the commencement of the action."  As Plaintiff was not released until August 31, 2002, the

4  statute of limitations was tolled until his release.  Plaintiff did not file suit until May 3, 2004,

5  over one year later.

6        42 U.S.C. § 1983 claims borrow the statute of limitations of the forum state's personal

7  injury laws. Wilson v. Garcia, 471 U.S. 261, 276 (1985).  "[W]here state law provides multiple

8  statutes of limitation for personal injury actions, courts considering § 1983 claims must borrow

9  the general or residual statute for personal injury actions." Johnson v. Chico, 725 F. Supp. 1097,

10  1100 (E.D. Cal. 1989) (citing Owens v. Okure, 488 U.S. 235 (1989)).  At the time, the applicable

11  statute of limitations was one year, under Cal. Civ. Proc. Code § 340(3).  "In 2002, the California

12  Legislature amended the statute of limitation provisions, moving the relevant portions of §

13  340(3) (now designated § 340(e)) to § 335.1," which provided a new two year statute of

14  limitations for personal injury actions, effective January 1, 2003. Kiss v. City of Santa Clara, No.

15  C-04-01964, 2004 U.S. Dist. LEXIS 19470, at *3 (N.D. Cal., September 15, 2004).  "Since

16  January 1, 2003, California's residual statute of limitations for personal injury actions has been

17  Cal. Civ. Proc. Code § 335.1, since that section contains an express 'catchall' provision, covering

18  any 'injury to or . . . death of one caused by the wrongful act or neglect of another.'" Thompson

19  v. City of Shasta Lake, 314 F. Supp. 2d 1017, 1024 (E.D. Cal. 2004) (citations omitted).  The

20  question that this court now faces is whether the old one year statute of limitations under Section

21  340(3) applies or the new two year statute of limitations under Section 335.1 applies.  Both State

22  Defendants and City Defendants argue that the one year statute of limitations applies, barring

23  Plaintiff's Section 1983 claims. See Doc. 17, Part 2; Doc. 18, Part 3.

24        "It is an established canon of interpretation that statutes are not to be given a retrospective

25  operation unless it is clearly made to appear that such was the legislative intent." Aetna Casualty

26  and Surety Co. v. Industrial Accident Comm'n, 30 Cal. 2d 388, 393 (Cal. 1947).  The statute

27  changing the law explicitly made the new statute of limitations retroactively applicable to victims

28  harmed by the events of September 11, 2001. See 2002 Cal. Legis. Serv. Ch. 448 (S.B. 688); Cal.

Civ. Proc. Code § 340.10(b).  Since other events and/or causes of action are not mentioned, they are, by implication, limited to the former one year statute of limitations.  Unfortunately, this does not resolve the question at hand.  Under the old law, actions accruing on September 11, 2001 due to terrorist attacks had to be filed by September 11, 2002.  The effect of Cal. Civ. Proc. Code § 340.10(b) was to allow suit on cases whose statutory period had already run by the date the new law was effective (January 1, 2003), to essentially reopen the statutory period after it had closed.  In Plaintiff's case, his statutory period had not yet run out as of January 1, 2003.

City Defendants and State Defendants both cite to one Central District opinion which states, "This Court has found no jurisprudence in California which expressly holds that the statute of limitations in effect at the time an action accrues, as opposed to the time it is filed, is the parameter under which timeliness must be determined." Abreu v. Ramirez, 284 F. Supp. 2d 1250, 1256 (C.D. Cal. 2003).  Faced with a Section 1983 suit, that court found that "Plaintiff does not benefit from this new two-year statute of limitations; since his claims herein accrued before January 1, 2003, the one-year statute governs." Abreu v. Ramirez, 284 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003).  However, contrary to the conclusion of the Central District, it appears that California has an established history of allowing a subsequent change in law to extend the statute of limitations period for actions whose original statutory period has not yet run out.

In 1939, California extended the statutory period during which a taxpayer could claim a special tax refund from three to four years, effective July 25, 1939.  "Section 23 of the 1939 act declared: 'This act, inasmuch as it provides for a tax levy for the usual current expenses of the State, shall, under the provisions of section 1 of Article IV of the Constitution, take effect immediately, and shall be applied in the computation of taxes accruing subsequent to December 31, 1938.'" Mudd v. McColgan, 30 Cal. 2d 463, 466 (Cal. 1947).  "It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted. Such legislation affects the remedy and is applicable to matters not already barred, without retroactive effect. Because the operation is prospective rather than retrospective, there is no impairment of vested rights." Mudd v. McColgan, 30 Cal. 2d 463, 468 (Cal. 1947).  Mudd sets out the proposition that an extension in the statute of limitation applies to

1   all matters that have already accrued and are not yet barred unless the legislation says otherwise.

2   Absent the clause limiting its application to matters accruing subsequent to December 31, 1938,

3   the change in law would have extended the statute of limitation for all matters accruing after July

4   25, 1936 (three years before effective date) as the statutory period would have still been open on

5   the effective date of the new law.  Applied to Cal. Civ. Proc. Code § 335.1, this principle means

6   that all actions accruing after January 1, 2002 enjoy a two year statute of limitation.  Other

7   federal district courts in California have also come to this conclusion. See, e.g. Thompson v. City

8   of Shasta Lake, 314 F. Supp. 2d 1017, 1024 (E.D. Cal. 2004); Lamke v. Sunstate Equip. Co., No.

9   C-03-4956, 2004 U.S. Dist. LEXIS 19345, at *18 (N.D. Cal., September 22, 2004); Kiss v. City

10  of Santa Clara, No. C-04-01964, 2004 U.S. Dist. LEXIS 19470, at *7 n.2 (N.D. Cal., September

11  15, 2004).  Plaintiff's Section 1983 claims are not time barred.

12

13  **C. Monell Violation Under Section 1983**

14          Both City Defendants and State Defendants argue that count three should be dismissed

15  for failure to state a cognizable claim. Doc. 6, at 4:13-14; Doc. 8, at 3:8-9.  Plaintiff's allegations

16  are that Defendants "had and have, and foster, a policy, practice, procedure, and custom of

17  Fourth and Fourteenth Amendment violations, including, but not limited to the specific bad

18  conduct in this case, and, on information and belief, planting evidence, coercing confessions

19  from innocent persons, coercing guilty or no contest pleas to criminal charges from innocent

20  persons, lying in police reports, causing false convictions of innocent persons, making illegal

21  threats to suspects, making illegal threats to witnesses, making false arrests, conducting illegal

22  searches, making illegal seizures, making false warrant applications, using excessive force, lying

23  under oath, suborning perjury, lying as witnesses, obstructing discovery of police criminal

24  conduct, covering -up illegal police activity, participating in a code of silence, and agreeing and

25  conspiring to do these things in the other cases listed herein." Transferred File, Doc. 14, at 9:6-

26  21.  The only concrete facts Plaintiff has provided concerns the events of March 27, 1996.  It

27  appears that count three is simply a recitation of a laundry list of bad acts a police

28  department/municipality/prosecutor's office could perform.  Plaintiff has not stated who

1   undertook to perform these acts or to implement the policy/practice/procedure/custom.  Plaintiff

2   also fails to explain how these alleged acts are involved in this case.

3        In deciding a motion to dismiss, the court must accept as true all material allegations in

4   the complaint and construes them in the light most favorable to the plaintiff. <u>Newman v.</u>

5   <u>Sathyavaglswaran</u>, 287 F.3d 786, 788 (9th Cir. 2002).  Nevertheless, conclusions of law,

6   conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be

7   accepted. See <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  Even "a

8   liberal interpretation of a civil rights complaint may not supply essential elements of the claim

9   that were not initially pled. Vague and conclusory allegations of official participation in civil

10  rights violations are not sufficient to withstand a motion to dismiss." <u>Ivey v. Board of Regents</u>,

11  673 F.2d 266, 268 (9th Cir. 1982).  Plaintiff's allegations of an official policy, practice,

12  procedure, or custom in count three are vague and conclusory.

13       Plaintiff also makes a separate <u>Monell</u> claim against the Bakersfield Officials under count

14  four.  In that count, Plaintiff specifically alleges that the Bakersfield Officials "have a custom of

15  improperly indemnifying, and of conspiring to indemnify police officers, for punitive damages

16  assessed against those officers by juries in civil rights cases, because [sic] that practice was a

17  moving force that caused the violations of the plaintiff's rights as alleged herein."  Transferred

18  File, Doc. 14, at 9:28-10:4.  Count four is adequately pleaded in contrast to count three.

19       To the extent both counts one and three refer to the actions of March 27, 1996, the causes

20  of action are duplicative.  Count three is dismissed, and count one is understood to allege solely

21  that Plaintiff's Fourth and Fourteenth Amendment rights were violated by Defendants Mullins,

22  Silvius, and Mora in their individual capacities.

23

24  **D. Conspiracy to Commit Section 1983 Violations**

25       City Defendants assert that the second cause of action (conspiracy to violate Section1983)

26

27

28

10

1    fails to state a cognizable claim due to vagueness.[3] Doc. 6, at 3:22-25.  A conspiracy claim under

2    Section 1983 requires "(1) the existence of an express or implied agreement among the defendant

3    officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights

4    resulting from that agreement." Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).  In

5    the Ninth Circuit, it is well settled that "To state a claim for a conspiracy to violate one's

6    constitutional rights under section 1983, the plaintiff must state specific facts to support the

7    existence of the claimed conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir.

8    1989).  "In order to survive a motion to dismiss, plaintiffs alleging a conspiracy to deprive them

9    of their constitutional rights must include in their complaint nonconclusory allegations

10   containing evidence of unlawful intent or face dismissal prior to the taking of discovery....This

11   standard is not intended to be difficult to meet as it serves the limited purpose of enabling the

12   district court to dismiss 'insubstantial' suits prior to discovery and allowing the defendant to

13   prepare an appropriate response, and where appropriate, a motion for summary judgment based

14   on qualified immunity" Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997).

15          Again, Plaintiff has supplied only the vaguest allegations concerning conspiracy.[4]  The

16   operative part of the amended complaint states "The conspiracy consisted of these defendants

17   agreeing to do, understanding that they would do, and doing the underlying bad acts specifically

18   alleged in this action to plaintiff, and of all defendants understanding and agreeing to do all the

19   things alleged against them in this complaint, or some of such things, in this case and in other

20   cases, and in other cases not yet identified." Transferred File, Doc. 14, at 8:22-28.  The only clear

21   fact that Plaintiff has alleged is that Defendant Mullins told Defendant Mora that Plaintiff was on

22   parole, leading the Kern County Narcotics Enforcement Team to search his motel room and

23

24          [3]State Defendants do not challenge the second cause of action. See Doc. 17, Part 1.
     Further, at oral argument, State Defendants did not respond to the court's invitation to clarify
25   precisely which causes of actions they sought to have dismissed.

26          [4]To the extent that conspiracy is alleged in count four against the Bakersfield Officials,
     that allegation is treated separately.  To allow the allegations that form the basis of a conspiracy
27   claim in count four to also serve as the basis of a conspiracy in count two would be duplicative.

28

arrest him based on evidence discovered therein.  Plaintiff has not alleged that Defendants

Mullins, Mora, and Silvius had any express or implied agreement to violate Plaintiff's rights.

Plaintiff has not in fact alleged that Defendants Mullins, Mora, and Silvius knew that Plaintiff

was not legally subject to a parole search.   Plaintiff also fails to explain how any other of the

Defendants have formed a conspiracy and how that conspiracy caused Plaintiff's alleged injuries.

The court can not fill in additional facts necessary to satisfactorily plead elements of the claim.

Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Further, the language concerning

"all the things alleged against [Defendants] in this complaint, or some of such things, in this case

and in other cases, and in other cases not yet identified" convinces the court that, as stated, the

claim is insubstantial and fails to meet the minimally heightened pleading requirements for

conspiracy.  Count two is dismissed against the City Defendants.


**E. City Defendants in Their Official Capacities**

City Defendants state that all individuals are improperly sued for damages in their official

capacities.  However, City Defendants simply make the assertion in the introductions and

conclusions of their papers without actually explaining their position. See Doc. 6, at 3:5-6 and

12:6-7; Doc. 25, at 5:18-19.  City Defendants can not assert sovereign immunity like the State

Defendants.  Suing an individual in their official capacity under Section 1983 is simply another

means of pleading an action against an entity of which the individual is an agent. Monell v. New

York City Dept. Of Social Services, 436 U.S. 658, 690 (1978).  So, suit against Defendants Hall,

Carson, Benham, Maggard, Couch, Hanson, Sullivan, Salvaggio, Mullins, and Silvius in their

official capacity is in reality, suit against the City of Bakersfield and the Bakersfield Police

Department.  "[I]t is no longer necessary or proper to name as a defendant a particular local

government officer acting in official capacity....If both are named, it is proper upon request for

the Court to dismiss the official-capacity officer, leaving the local government entity as the

correct defendant. If only the official-capacity officer is named, it would be proper for the Court

upon request to dismiss the officer and substitute instead the local government entity as the

correct defendant." Luke v. Abbott, 954 F. Supp. 202, 204 (C.D. Cal. 1997).  The City of

12

1   Bakersfield is already a named Defendant.  The Bakersfield Police Department should be

2   substituted in place of Defendants Mullins and Silvius in their official capacities for the Section

3   1983 claims.  However, all Section 1983 claims against Defendant Mullins and Silvius in their

4   official capacity have been dismissed.  Therefore, all City Defendants in their official capacities

5   are dismissed.

6

7   **F. Respondeat Superior**

8            There is no respondeat superior liability under 42 U.S.C. § 1983.  Palmer v. Sanderson, 9

9   F.3d 1433, 1437-38 (9th Cir. 1993).  State Defendants allege that the claims against Defendants

10  Woodford, Terhune, Rimmer, Schwarzenegger, and Wilson are based solely on their positions

11  (Directors of CDC and Governors of California). Doc. 8, at 7:22-26.  Plaintiff's only response is

12  that "Plaintiff does not contend liability on his federal civil rights claims may be based on

13  *respondeat superior*." Doc. 10, at 19:10-12.  Plaintiff does not allege that suit against these

14  Defendants is predicated on Monell liability and does not appear to oppose this part of State

15  Defendants' motion.  All claims against Defendants Woodford, Terhune, Rimmer,

16  Schwarzenegger, and Wilson are dismissed.

17           City Defendants also claim that the Bakersfield Officials are sued based solely on

18  respondeat superior. Doc. 6, at 10:25-11:2.  Plaintiff responds that suit against these Defendants

19  is based on "Monell/Individual Liability Claims" as "Supervisors may be held liable under

20  section 1983 for their own culpable inaction in the training, supervision, or control of

21  subordinates; for acquiescence in the constitutional violations complained of; or for conduct

22  showing a reckless or callous indifference to the rights of others, if such conduct or inaction led

23  to the injury complained of." Doc. 14, at 12:24-13:1.  In the amended complaint, Plaintiff alleges

24  "defendants are liable because they have a custom of improperly indemnifying, and of conspiring

25  to indemnify police officers, for punitive damages assessed against those officers by juries in

26  civil rights cases, because that practice was a moving force that caused the violations of the

27  plaintiff's rights as alleged herein." Transferred File, Doc. 14, at 9:27-10:4.  Plaintiff's argument

28  is that the Bakersfield Officials promulgated a policy or custom of indemnification of punitive

13

damage awards which encouraged constitutional violations.  With respect to promulgation of policies, "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (citations omitted).  As stated, Plaintiff has sufficiently articulated a cause of action against these Defendants in their individual capacity based on count four.

**G. Qualified Immunity**

State Defendants argue that Defendant Mora is entitled to qualified immunity. Doc. 8, at 6:15.  City Defendants argue that all City Defendants (save the City of Bakersfield itself) are also entitled to qualified immunity. Doc. 6, at 7:16-18.

The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" in their individual capacities. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made," and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces." <u>Estate of Ford v. Rameriz-Palmer</u>, 301 F.3d 1043, 1049 (9th Cir. 2002) (citation omitted).  This is why the rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Estate of Ford v. Rameriz-Palmer</u>, 301 F.3d 1043, 1049 (9th Cir. 2002) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)).  A public official is entitled to qualified immunity if the law governing the official's conduct was not clearly established, or if under clearly established law he could have reasonably believed that his conduct was lawful. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir.2001); <u>Romero v. Kitsap County</u>, 931 F.2d 624, 627 (9th Cir. 1991).  The defendant bears the burden of establishing qualified immunity. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 586- 87 (1998).  In a motion to dismiss, "a Rule 12(b)(6) dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified

1   immunity applies." <u>Groten v. California</u>, 251 F.3d 844, 851 (9th Cir. 2001).

2       A court required to rule upon the qualified immunity issue must address two steps.  In the

3   first step, the court must answer the following question: "Taken in the light most favorable to the

4   party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

5   right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001); <u>Johnson v. County of Los Angeles</u>, 340 F.3d

6   787, 792 (9th Cir. 2003).  If the answer is affirmative in that "a violation could be made out on a

7   favorable view of the parties' submissions, the next, sequential step is to ask whether the right

8   was clearly established....The relevant, dispositive inquiry in determining whether a right is

9   clearly established is whether it would be clear to a reasonable officer that his conduct was

10  unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 201-202 (2001).  If the

11  answer is negative, the official is entitled to qualified immunity.

12      Plaintiff asserts that qualified immunity can not be determined based upon the amended

13  complaint itself. Doc. 10, at 18:6-9.  Against Defendant Mora, the only facts that are provided

14  state that Defendant Mullins "falsely told Mora plaintiff was on active parole" leading Defendant

15  Mora to initiate Plaintiff's arrest. Transferred File, Doc. 14, at 7:16-19.  State Defendants argue

16  that "Law enforcement officers such as Ms. Mora are generally entitled to rely on information

17  obtained from fellow law enforcement officer...And had Officer Mullins's representation been

18  accurate, the ensuing search would have passed Constitutional muster." Doc. 13, at 3:18-21.

19  "Although a police officer is entitled to rely on information obtained from fellow law

20  enforcement officers, this in no way negates a police officer's duty to reasonably inquire or

21  investigate these reported facts. We have denied qualified immunity to police officers who had

22  indisputably relied on information obtained from other law enforcement officials, when we

23  concluded that they violated their duty to conduct further investigation." <u>Mendocino Envtl. Ctr.</u>

24  <u>v. Mendocino County</u>, 192 F.3d 1283, 1293 n.16 (9th Cir. 1999) (citations omitted).  Given the

25  bare facts of the pleading, the court has no means by which to determine whether Defendant

26  Mora adequately fulfilled any duty to investigate.  Qualified immunity can not be granted at this

27  time to Defendant Mora.

28      City Defendants argues that "Plaintiff does not plead any facts as to why the information

1  received by MULLINS should not have been relied upon at the time it was received or any facts

2  that MULLINS knew or should have known the information was unreliable and potentially

3  false." Doc. 6, at 10:9-11.  However, the burden of proving qualified immunity rests upon those

4  asserting the defense.  The same argument that compels denial of qualified immunity against

5  Defendant Mora also applies against Defendants Silvius and Mullins; qualified immunity can not

6  be granted at this time to Defendants Mullins and Silvius.

7       City Defendants argue that the Bakersfield Officials are entitled to qualified immunity.

8  Doc. 6, at 7:16-18.  The only operative claim against these individuals (as counts two and three

9  are dismissed) is that they promulgated a policy or custom of indemnification of punitive damage

10  awards which encouraged constitutional violations.  Under Cal. Gov. Code § 825(b), "a public

11  entity is authorized to pay that part of a judgment that is for punitive or exemplary damages if the

12  governing body of that public entity, acting in its sole discretion except in cases involving an

13  entity of the state government, finds all of the following: (1) The judgment is based on an act or

14  omission of an employee or former employee acting within the course and scope of his or her

15  employment as an employee of the public entity. (2) At the time of the act giving rise to the

16  liability, the employee or former employee acted, or failed to act, in good faith, without actual

17  malice and in the apparent best interests of the public entity. (3) Payment of the claim or

18  judgment would be in the best interests of the public entity."

19       In finding that qualified immunity applied in a case similar to the one at hand, the Ninth

20  Circuit stated "far from being 'clearly established law,' a policy of indemnifying punitive damage

21  awards has never been judicially determined as violating constitutional rights by encouraging

22  police officers to use excessive force." Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The

23  opinion in Trevino was issued on November 1, 1996.  The operative events in this case happened

24  on March 27, 1996.  In order for any indemnification to have caused the alleged constitutional

25  violations suffered by Plaintiff, that indemnification must have occurred prior to March 27, 1996.

26  At that time, there was no clearly established law specifying a constitutional right; the

27  Bakersfield Officials are entitled to qualified immunity on this claim.  As Trevino noted,

28  qualified immunity for the individual is a different analysis than Monell liability for the

**16**

1   government entity; count four survives as a claim against the City of Bakersfield itself.

2       The opinion in <u>Trevino</u> is a clear touchstone on the issue; officials' decisions to

3   indemnify before <u>Trevino</u> are protected by qualified immunity. See <u>Cunningham v. Gates</u>, 229

4   F.3d 1271, 1293 (9th Cir. 2000) ("The Cunningham/Soly incident occurred nearly one year

5   before we decided *Trevino*. As a matter of chronological necessity, it was not clearly established

6   before or at the time of the Cunningham/Soly incident that voting to indemnify officers against

7   punitive damage awards could violate constitutional rights. Thus, even assuming that these

8   decisions somehow promoted the alleged use of excessive force in the Cunningham/Soly

9   incident, the council members are clearly entitled to qualified immunity for lawsuits based on

10  pre-*Trevino* decisions to indemnify officers against punitive damage awards.").[5]

11

12  **H. Standing for Civil RICO Claim**

13      In counts seven and eight, Plaintiff seeks recovery for alleged violations of RICO (18

14  U.S.C. § 1961 et seq).  State Defendants argue that Plaintiff lacks standing to bring suit for civil

15  damages under RICO as Plaintiff lacks an injury to "business or property" as required by 18

16  U.S.C. § 1964(c). Doc. 8, at 4:19-24.  The "injury" due to RICO violation must be a "concrete

17  financial loss, and not mere injury to a valuable intangible property interest" in order to be

18  compensable. <u>Oscar v. University Students Co-Operative Ass'n</u>, 965 F.2d 783, 785 (9th Cir.

19  1992) (citations omitted).  In <u>Oscar</u>, the Ninth Circuit held that drug dealing in neighboring

20  property did not cause a compensable injury to apartment tenants as diminution in enjoyment of

21

22      [5]Plaintiff's Counsel, Stephen Yagman, was counsel in both <u>Trevino</u> and <u>Cunningham</u>.
23  Mr. Yagman is clearly familiar with the cases as he argued against the application of qualified
    immunity at both oral arguments before the Ninth Circuit.  Indeed, the key holding relevant to
24  this issue (qualified immunity for pre <u>Trevino</u> indemnification) was recognized in a subsequent
    Ninth Circuit case in which his wife and law firm partner was counsel, <u>Navarro v. Block</u>, 250
25  F.3d 729, 733 (9th Cir. 2001).  In discussing whether the Bakersfield Officials are entitled to
26  qualified immunity, Plaintiff does not discuss these cases. See Doc 14, at 13:8-18.  Mr.
    Yagman's failure to cite to these authorities adverse to his client's position, which are directly on
27  point and binding on this court, can not be viewed as anything but a deliberate violation of his
28  duty of candor to this court.

1 property is not a tangible injury and the plaintiff had no out of pocket costs.  State Defendants[6]

2 cite to Oscar  for the proposition that "personal injuries are not compensable under RICO." Oscar

3 v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir. 1992).  "Congress

4 unquestionably would have considered the remedies established in the Civil Rights Act to be

5 more analogous to tort claims for personal injury than, for example, to claims for damages to

6 property or breach of contract....'In essence, § 1983 creates a cause of action where there has

7 been injury, under color of state law, to the person or to the constitutional or federal statutory

8 rights which emanate from or are guaranteed to the person. In the broad sense, every cause of

9 action under § 1983 which is well-founded results from personal injuries.'" Wilson v. Garcia,

10 471 U.S. 261, 277-78 (1985) (quoting Almond v. Kent, 459 F.2d 200, 204 (4th Cir. 1972)).

11 Plaintiff relies primarily on Nat'l Org. for Women v. Scheidler, 510 U.S. 249 (1994) in

12 asserting that he has suffered an injury compensable under RICO.  Plaintiff argues that "An

13 exhaustive review of the case law in light of NOW makes clear that Oscar is of dubious, if any,

14 precedential value." Doc. 10., at 13:11-12.  In NOW, the U.S. Supreme Court summarily found

15 without explanation that medical clinics had standing to sue under RICO based on the allegation

16 of a conspiracy "to use force to induce clinic staff and patients to stop working and obtain

17 medical services elsewhere." Nat'l Org. for Women v. Scheidler, 510 U.S. 249, 256 (1994).  The

18 case did not deal with the argument that doctors and patients had standing.  While NOW has led

19 to broader interpretation of what constitutes a compensable injury, it does not compel a

20 conclusion that Plaintiff has standing in this case.  The U.S. Supreme Court was silent as to the

21 nature of the injury that gave rise to the standing.  One interpretation is that the diminution in

22 value of the clinic as a business due to the decreased number of clients was the injury that gave

23 rise to RICO liability.  It is not at all clear NOW constitutes a rejection of the Ninth Circuit's

24 conclusion in Oscar that personal injuries are not compensable under RICO.

25 Plaintiff cites to a number of cases from outside the Ninth Circuit that have taken a

27
28 [6]City Defendants join in State Defendant's argument concerning the unavailability of civil RICO as a valid cause of action in this case. Doc. 25, at 5:1-4.

1 position inconsistent with Oscar. See National Asbestos Workers Med. Fund v. Philip Morris,

2 Inc., 74 F. Supp. 2d 221, 229 (E.D.N.Y. 1999) ("The recovery of pecuniary losses associated

3 with physical injuries directly caused by racketeering conduct is consistent with the language of

4 the RICO statute"); Evans v. City of Chicago, No. 00 C 7222, 2001 WL 1028401, at *5 (N.D.

5 Ill., September 6, 2001) (lost wages for time of imprisonment and attorney's fees for criminal

6 defense recoverable, but lost reputation and diminished capacity for future earnings not

7 recoverable).  State Defendants characterize Plaintiff's alleged injuries due to RICO violations as

8 ones based on "alleged false arrest and imprisonment." Doc. 8, at 4:25-26.  Plaintiff, in

9 opposition, does not dispute this characterization. See Doc. 10, at 8:24-17:13.

10      Plaintiff's attorney has worked on a number cases in California dealing with the issue of

11 standing under RICO for injury due to false arrest and imprisonment, but does not cite to them.[7]

12 In one such case, the Central District held that "Loss of employment, denial of employment

13 benefits, loss of business opportunities, and damage to professional reputation have all been held

14 to constitute cognizable injuries to business or property for purposes of RICO, so long as the

15 injuries were proximately caused by a pattern of racketeering activity." Guerrero v. Gates, 110 F.

16 Supp. 2d 1287, 1293 (C.D. Cal. 2000) (citing out of state authority).  While recognizing that the

17 Ninth Circuit in Oscar determined that there is no standing when the injury is a personal injury,

18 the court nevertheless reasoned that "A number of courts, however, have accepted or shown a

19 disposition in favor of allowing RICO claims for the pecuniary losses associated with personal

20 injuries caused by racketeering." Guerrero v. Gates, 110 F. Supp. 2d 1287, 1293 (C.D. Cal.

21

22

23     [7]Plaintiff's attorney made the same argument to the Ninth Circuit in a case heard last
year. Diaz v. Gates, 380 F.3d 480 (9th Cir. 2004).  In that case, the Ninth Circuit found that "this
and other courts have consistently held that personal injuries are not recoverable under RICO."

24 NOW was distinguished in that the injury was a business injury as opposed to a personal injury.
The opinion was granted a rehearing en banc and vacated by Diaz v. Gates, 389 F.3d 869 (9th

25 Cir. 2004).  At oral argument, Plaintiff made reference to the case, arguing that recent oral

26 arguments in the case suggested that a majority of the appellate judges would reverse the panel's
decision.  However, no opinion has yet been issued.  This court declines to speculate on the

27 Ninth Circuit's final disposition in the matter.

28

1   2000).

2       The relevant holding in <u>Guerrero</u> has been cited by only one other case in the Ninth

3   Circuit.[8]  In that unpublished opinion, a Central District court considered both <u>Guerrero</u> and

4   <u>Oscar</u>, concluding that where the plaintiff alleges false arrest and imprisonment, he has no

5   standing to recover damages under RICO for "employment, employment opportunities, and the

6   wages and other compensation associated with said employment and opportunities inasmuch as

7   he was unable to pursue gainful employment while defending himself against unjust charges

8   and/or while unjustly incarcerated." <u>Walker v. Gates</u>, No. CV 01-10904, 2002 WL 1065618, at

9   *8-10 (C.D. Cal., May 28, 2002).  <u>Walker</u> emphasized that the rationale relied on in <u>Guerrero</u>

10  "was implicitly rejected by the Ninth Circuit in *Oscar*. The plaintiff in *Oscar* lacked standing to

11  sue not only because she failed to allege any out-of-pocket expenditures, but also because the

12  injury she alleged is like that claimed by the plaintiff in a personal injury action." <u>Walker v.</u>

13  <u>Gates</u>, No. CV 01-10904, 2002 WL 1065618, at *8-10 (C.D. Cal., May 28, 2002) (citations

14  omitted).  This court agrees with <u>Walker</u>'s conclusion that <u>Guerrero</u> departed from Ninth Circuit

15  precedent.

16      In his amended complaint, Plaintiff alleges that he "lost actual employment, actual

17  employment opportunities, and the actual wages and other actual compensation associated with

18  said employment and opportunities." Transferred File, Doc. 14, at 13:28-14:2.  The suit is one

19  founded on claims of false arrest and imprisonment, which are characterized as personal injuries.

20  Plaintiff has no standing to sue under RICO; counts seven and eight are dismissed against all

21  Defendants.  As lack of standing deprives the court of subject matter jurisdiction on this issue,

22  the court expresses no opinion of the merits of City Defendants' argument that claims seven and

23  eight must be dismissed due to Plaintiff's failure to allege "racketeering activity" within the

24  meaning of RICO.

25

26  //

27  _____

28      [8]Plaintiff's attorney was also represented the plaintiff in that case.

20

**I. Cal. Civ. Code § 52.1**

Plaintiff 's ninth cause of action seeks damages against unspecified Defendants pursuant to Cal. Civ. Code § 52.1.  Cal. Gov. Code § 950.2 states that any cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred due to the failure of presenting a timely claim.  Under the California Government Tort Claims Act, a plaintiff may not maintain an action for damages against a public entity unless a written claim has first been presented to the defendant and the defendant rejects the claim. Cal Gov. Code §§ 905 and 945.4.  A claim based on a personal injury cause of action must be presented within six months of the date the cause of action accrued. Cal. Gov. Code § 911.2.  To state a tort claim against the state of California (or any state employee acting in the scope of his/her employment) the plaintiff must allege compliance with Section 911.2. Dujardin v. Ventura County General Hosp., 69 Cal. App. 3d 350, 355 (Cal. Ct. App. 1977).  Plaintiff has made no such pleading.

Plaintiff responds that he does not need to plead compliance with state requirements because "federal, and not state rules of pleading are applicable." Doc. 10, at 18:25-19:1. "[F]ederal courts require compliance with the CTCA for pendent state law claims against public employees." Barry v. Ratelle, 985 F. Supp. 1235, 1238 (S.D. Cal. 1997) (citing Willis v. Reddin, 418 F.2d 702, 704 (9th Cir. 1968)).  As Plaintiff has failed to plead such compliance, count nine is dismissed against all Defendants.

## IV. Conclusion

State Defendant's motion to dismiss is GRANTED in part and DENIED in part.  City Defendant's motion to dismiss is GRANTED in part and DENIED in part.

1. All claims against Defendants Woodford, Terhune, Rimmer, Schwarzenegger, and Wilson are DISMISSED.

2. All claims against Defendant Mora in her official capacity are DISMISSED.

3. All claims against Defendants Hall, Carson, Benham, Maggard, Couch, Hanson,

1    Sullivan, and Salvaggio are DISMISSED.

2           4. All claims against Defendants Silvius and Mullins in their official capacities are

3    DISMISSED.

4           5. Claims three, seven, eight, and nine are DISMISSED.

5           6. Claim one is understood to be a Section 1983 claim against Defendants Silvius,

6    Mullins, and Mora in their individual capacities.

7           7. Claim two is understood to be a conspiracy to commit the Section 1983 violation

8    alleged in claim one against Defendant Mora in her individual capacity.

9           8. Claim four is understood to be a Monell claim against the City of Bakersfield only.

10

11   IT IS SO ORDERED.

12   **Dated:    April 15, 2005**                    **/s/ Anthony W. Ishii**
     h7ehd6                                          UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28