UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GARY WILLIS, | ) | CIV-F-04-6542 AWI LJO |
| | ) | |
| Plaintiff, | ) | ORDER RE: SUMMARY ADJUDICATION |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH MULLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff has made a motion for summary adjudication against all Defendants. Defendant Mora and Defendants Mullins, Silvius, and the City of Bakersfield ("City Defendants") have filed separate oppositions.

**I. History**

Gary Willis ("Plaintiff") was a registered occupant of room 221 of the E-Z 8 Motel on March 27, 1996. Police received reports of heavy traffic from that room. A Kern County Narcotics Enforcement Team consisting of four members (Bakersfield Police Officer Joseph Mullins; Bakersfield Police Officer Silvius; Kern County Deputy Sheriff Hood; and California State Parole Officer Diane Mora) investigated. Defendant Mullins told Defendant Mora that Plaintiff was on parole subject to search condition; Defendant Mora arranged for the team of officers to search the motel room. After announcing their presence and entering room 221, the officers found Plaintiff and Kathleen Moye with a knife, a syringe, and a briefcase. The officers

announced the commencement of a parole search.  Plaintiff informed Defendant Mullins he was no longer on parole.  The officers halted the search while Defendant Mora sought telephone confirmation of Plaintiff's parole status.  While the call was taking place, Defendant Silvius talked with Kathleen Moye who admitted that there was a "speed pipe" in the briefcase and that she had recently used methamphetamine.  At this point, the officers searched the room.  Based on evidence collected from the search, Plaintiff was ultimately convicted of possession of methamphetamine for sale (Cal. Health & Safety Code § 11378) and possession of narcotics paraphernalia (Cal. Health & Safety Code § 11364).  He ultimately served over six years in state prison.

Plaintiff made a motion to suppress evidence before the trial court which was denied.  On appeal, the Fifth District found the entry constitutionally invalid and the good faith exception to exclusion inapplicable, but nonetheless affirmed the denial of suppression based on the finding that the officers had sufficient probable cause based on Kathleen Moye's statements.  The Fifth District's rationale was that the "freeze" in search was a reasonable response to the uncertainty concerning Plaintiff's parole status. People v. Willis, 71 Cal. App. 4th 530, 541 (Cal. Ct. App. 2002).  On appeal, the attorney general conceded the Fifth District's rationale for denying the motion to suppress was erroneous. People v. Willis, 28 Cal. 4th 22, 25 (Cal. 2002).  The California Supreme Court overturned Plaintiff's conviction on June 3, 2002, finding that evidence from the search must be suppressed as the good faith exception did not apply. People v. Willis, 28 Cal. 4th 22, 38 (Cal. 2002).   Plaintiff was released on August 31, 2002.  Plaintiff first filed this suit in the Central District of California on May 3, 2004.  He filed his amended complaint on September 16, 2004. Transferred File, Doc. 14.  At a hearing on November 8, 2004, the trial judge ordered the case transferred to the Eastern District of California due to improper venue.

The original named defendants in the case were the four officers who took part in the March 27, 1996 arrest; former California Governor Pete Wilson; current California Governor Arnold Schwarzenegger; former CDC Director C.A. Terhune; former CDC Director Richard Rimmer; current CDC Director Jeanne Woodford; the City of Bakersfield; Mayor of Bakersfield

Harvey Hall; Bakersfield City Council Member Irma Carson; Bakersfield City Council Member Sue Benham; Bakersfield City Council Member Mike Maggard; Bakersfield City Council Member David Couch; Bakersfield City Council Member Harold Hanson; Bakersfield City Council Member Jacquie Sullivan; and Bakersfield City Council Member Mark Salvaggio. Plaintiff sues all persons in both their official and individual capacities. The amended complaint contained nine causes of action: (1) monetary relief under 42 U.S.C. § 1983 for violation of Fourth and Fourteenth Amendment rights; (2) monetary relief under 42 U.S.C. § 1983 for conspiracy to commit count one; (3) monetary relief under 42 U.S.C. § 1983 for a policy, practice, procedure, and custom of committing Fourth and Fourteenth Amendment violations; (4) monetary relief under 42 U.S.C. § 1983 against [the Bakersfield Officials] for the City's policy of indemnifying police officers in civil rights cases; (5) declaratory relief under 28 U.S.C. § 2201 finding that there is a custom, pattern and practice of Fourth and Fourteenth Amendment violations by police in California; (6) injunctive relief under 28 U.S.C. § 1651 preventing all Defendants from engaging in violations of the Fourth and Fourteenth Amendment; (7) monetary relief under RICO for loss of actual employment and employment opportunities; (8) monetary relief for conspiracy to commit count seven; and (9) monetary relief under Cal. Civ. Code § 52.1 for violation of Fourth and Fourteenth Amendment rights. See Transferred File, Doc. 14.

The Defendants fell into two groups, which are separately represented by counsel: those affiliated with the City of Bakersfield and those affiliated with the State of California. Both groups filed motions to dismiss. Docs. 5 and 7. Plaintiff opposed both motions. Docs. 10 and 14. Oral argument was held on March 28, 2005. The motions to dismiss were granted in part and denied in part on April 18, 2005. By Order, all Defendants except Mora, Mullins, Silvius, and the City of Bakersfiled were dismissed; claims three, seven, eight, and nine were dismissed with limitations to claims one, two, and four. Doc. 33.

Plaintiff filed a motion for summary adjudication on May 20, 2005. Doc. 45. He seeks to establish (1) the unconstitutionality of the search and arrest; (2) the inapplicability of the

qualified immunity affirmative defense; and (3) the unreasonableness of Defendants' behavior.[1] The motion is based solely on the California courts' determination that Plaintiff's Fourth Amendment rights were violated; Plaintiff seeks the application of issue preclusion.  Defendants opposed the summary adjudication motion. Docs. 52 and 55.  Oral argument was originally scheduled for July 11, 2005.  On July 6, 2005, the court issued an order postponing oral argument to allow additional briefing on the issue of privity in issue preclusion analysis. Doc. 65. Defendant Mora filed a brief on July 22, 2005. Doc. 69.  City Defendants filed their brief on July 25, 2005. Doc. 70.  Plaintiff filed his brief on July 25, 2005. Doc. 72.  Oral argument was held on August 1, 2005.

## II. Legal Standards

**A. Summary Judgment or Adjudication**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. Proc. 56(c).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

---

[1] Plaintiff also seeks summary adjudication on the issue of "malicious prosecution" but that is not a cause of action in this case. Doc. 45, Plaintiff's Notice of Motion, at 2:3.

1  depositions, answers to interrogatories, and admissions on file." <u>Celotex Corp. v. Catrett</u>, 477
2  U.S. 317, 323 (1986).  Indeed, summary judgment should be entered, after adequate time for
3  discovery and upon motion, against a party who fails to make a showing sufficient to establish
4  the existence of an element essential to that party's case, and on which that party will bear the
5  burden of proof at trial.  "[A] complete failure of proof concerning an essential element of the
6  nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>,
7  477 U.S. 317, 322 (1986).   In such a circumstance, summary judgment should be granted, "so
8  long as whatever is before the district court demonstrates that the standard for entry of summary
9  judgment, as set forth in Rule 56(c), is satisfied." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323
10 (1986).

11       If the moving party meets its initial responsibility, the burden then shifts to the opposing
12 party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.
13 Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l Bank of Arizona v. Cities
14 Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los Angeles</u>, 607 F.2d 1276, 1280
15 (9th Cir. 1979).

16       In attempting to establish the existence of this factual dispute, the opposing party may not
17 rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of
18 specific facts in the form of affidavits, and/or admissible discovery material, in support of its
19 contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>,
20 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must
21 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
22 suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W.
23 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that
24 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
25 the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d
26 1433, 1436 (9th Cir. 1987).

27       In the endeavor to establish the existence of a factual dispute, the opposing party need not
28 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, citation omitted.

**B. Issue Preclusion**

Under the doctrine of res judicata, a prior adjudication may have two distinct types of preclusive effects: claim preclusion and issue preclusion.[2]  "[A] federal court must give to a

---

[2]The Ninth Circuit and the U.S. Supreme Court have noted a preference for the terms "claim preclusion" and "issue preclusion" as opposed to the less precise terms "res judicata" and "collateral estoppel." See Migra v. Warren City Sch. Dist. Bd. of Education, 465 U.S. 75, 77 n.1 (1984); Robi v. Five Platters, 838 F.2d 318, 321-22 (9th Cir. 1988).

state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81 (1984). Under California law, a number of factors must be met before issue preclusion can apply. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. The party asserting collateral estoppel bears the burden of establishing these requirements." Lucido v. Superior Court, 51 Cal. 3d 335, 341 (Cal. 1990), citations omitted.

### III. Discussion

Plaintiffs seek to use the California Supreme Court decision in People v. Willis to preclude Defendants from arguing that their search of Plaintiff's home was lawful or that they acted reasonably in undertaking the search.  Plaintiff's argument is based solely on the application of issue preclusion; he offers no other evidence in support of his motion. Under California law, a number of factors must be met before issue preclusion can apply. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. The party asserting collateral estoppel bears the burden of establishing these requirements." Lucido v. Superior Court, 51 Cal. 3d 335, 341 (Cal. 1990), citations omitted.  The key issue is privity between the state criminal prosecution in People v. Willis and the Defendants.

The U.S. Supreme Court conclusively found that the preclusive effect of a state court judgement is determined by that state's rules of preclusion in 1984. Migra v. Warren City School

1  Dist. Bd. of Education, 465 U.S. 75, 81 (1984).  A review of California law on the issue of

2  privity does not show a clear picture.

> Privity is a concept not readily susceptible of uniform definition. Traditionally it has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase. The concept has also been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel....In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation.

Clemmer v. Hartford Insurance Co., 22 Cal.3d 865, 875 (Cal. 1978), citations omitted.  That is, Clemmer identifies the requirements as (1) an identity or community of interest, (2) adequate representation, and (3) circumstances that should lead a party to expect to be bound. See Vega v. Jones, Day, Reavis & Pogue, 121 Cal. App. 4th 282, 299 (Cal. Ct. App. 2004) (recognizing these three requirements).  Older case law suggests some other potential bases: "there are situations where persons neither parties nor privies to parties to an action may be bound by a judgment. The rule is stated in section 84 of the Restatement of Judgments as follows: 'A person who is not a party but who controls an action, individually or in co-operation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound.'" Dillard v. McKnight, 34 Cal. 2d 209, 216 (Cal. 1949).

    The California Supreme Court once stated "Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity." People v. Sims, 32 Cal. 3d 468, 486 (Cal. 1982), quoting Lynch v. Glass, 44 Cal. App. 3d 943, 947 (Cal. Ct. App. 1975).  The case law suggests the jurisprudence on

privity lacks theoretical coherence.  Instead of one single, unified rule of privity, there are multiple bases upon which privity may be found.

**A. Community of Interest**

Plaintiff claims that the criminal prosecution and the Defendants shared a community of interest sufficient to impose privity. See Doc. 72, Plaintiff's Additional Brief, at 5-8.  The concept of privity has "been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." Dyson v. State Personnel Bd., 213 Cal. App. 3d 711, 723 (Cal. Ct. App. 1989).  In Dyson, the plaintiff was a counselor at a state-run youth facility.  Peace officers from the youth facility searched plaintiff's home, found stolen items, and turned the items over to the sheriff's department.  Criminal proceedings were initiated against the plaintiff, but the search was determined to be illegal, and the evidence was suppressed.  The youth facility fired the plaintiff, who then sought recourse before a state personnel board.  The seized items were then produced by the youth facility in an administrative hearing on the matter.  The appeals court found that the state personnel board erred in not excluding the evidence, specifically finding that there was sufficient privity between the criminal prosecutors and the youth facility to apply issue preclusion. Dyson v. State Personnel Bd., 213 Cal. App. 3d 711, 727 (Cal. Ct. App. 1989).

In coming to this conclusion, the Dyson court relied heavily on People v. Sims, 32 Cal. 3d 468 (Cal. 1982), which "held that the administrative decision exonerating a welfare recipient of welfare fraud precluded the district attorney from pursuing a criminal action against the recipient for the same alleged misconduct." Dyson v. State Personnel Bd., 213 Cal. App. 3d 711, 725 (Cal. Ct. App. 1989).  In relevant part, "Both entities are county agencies that represented the interests of the State of California at the respective proceedings. The district attorney's office represents the State of California in the name of the 'People' at criminal prosecutions. At fair hearings, the county welfare department acts as the 'agent' of the State. The courts have held that the agents of the same government are in privity with each other, since they represent not their

own rights but the right of the government." <u>Dyson v. State Personnel Bd.</u>, 213 Cal. App. 3d 711, 725 (Cal. Ct. App. 1989), quoting <u>People v. Sims</u>, 32 Cal. 3d 468, 487 (Cal. 1982). In another case cited in <u>Dyson</u>, the state motor vehicle agency was precluded from raising the issue of a motorist's arrest for the purpose of justifying suspension of his license after criminal proceedings had determined that the arrest was unlawful.[3] <u>Buttimer v. Alexis</u>, 146 Cal. App. 3d 754 (Cal. Ct. App. 1983). The <u>Dyson</u> court recognized the importance of the fact that both the prosecutor's office and the youth facility are agents of the State of California (as was the case in the above cases cited to where privity was found) and went further to require a community of interest. <u>Dyson v. State Personnel Bd.</u>, 213 Cal. App. 3d 711, 726-27 (Cal. Ct. App. 1989). "From the very start, a convergence between the disciplinary interests and the penal interests was evident....Because a criminal conviction of theft would have constituted cause for the discipline of Dyson under the civil service laws (Gov. Code, § 19572, subd. (k)), the agency's disciplinary interest in the criminal proceeding was direct. The district attorney had every incentive to vigorously litigate the issue of the legality of the search. The agency (through its agents) was the chief 'accuser' at the criminal proceeding. Its role at the disciplinary hearing was the same. The litigation objectives of the district attorney and the Attorney General in their respective proceedings were identical." <u>Dyson v. State Personnel Bd.</u>, 213 Cal. App. 3d 711, 727 (Cal. Ct. App. 1989).

In applying <u>Dyson</u> to the facts of this case, the court finds that the Defendants do not share a sufficient community of interest with the criminal prosecution. Plaintiff has misinterpreted what is required to constitute a community of interest. While police do aspire to enforce the law, individual officers can not be said to have a personal stake in ensuring conviction. Criminal prosecution can be said to have a dual purpose; it punishes an action that

---

[3]This holding in <u>Buttimer</u> has been superceded by statute. Issue preclusion between Department of Motor Vehicles administrative proceedings and criminal proceedings was codified by Cal. Veh. Code § 13353.2 in 1990, and is no longer subject to the normal issue preclusion analysis, as recognized by the California Supreme Court. <u>Gikas v. Zolin</u>, 6 Cal. 4th 841, 852 (Cal. 1993).

has created both public and private injuries. The state is injured in light of the fact that its laws were violated while private actors are often injured more directly. Criminal punishments often include both imprisonment and restitution to the victims of the crime, illustrating the dual nature of the proceedings. In the examples of the welfare department and state personnel board, the state parties against which privity was asserted had a direct stake in the outcome of the suit; the criminal prosecutions alleged that the criminal defendants stole from the state parties. Here, the Defendants' financial interests were not represented in the criminal prosecution the same way the welfare department or state personnel board were.

**B. Control**

Plaintiff's other assertion is that Defendants controlled or directed the criminal prosecution, giving rise to privity. See Doc. 72, Plaintiff's Additional Brief, at 4. This issue has been touched on by the Ninth Circuit in a case dealing with a habeas petition: "The state was not a party to the initial evidentiary hearing in federal court and was not in privity with the federal prosecutors. The state would be bound by the prior determination only if state prosecutors had participated actively in the federal prosecution. Although the same Los Angeles police detectives testified at both the federal and state hearings, this did not create privity between the state and federal prosecutors. At the federal hearing, the detectives did not have the authority to act in the state's name or to decide how the prosecution would proceed." Stephens v. Attorney Gen., 23 F.3d 248, 249 (9th Cir. 1994), citing United States v. Davis, 906 F.2d 829, 834-35 (2nd Cir. 1990). Davis specifically notes that a police decision to report evidence to a prosecuting authority is "not the same as initiating a prosecution....the focus of this inquiry must be on those with the authority to act in their sovereign's name, the prosecutors, and not the law enforcement officers." United States v. Davis, 906 F.2d 829, 834 (2nd Cir. 1990).

Plaintiff asserts privity as Defendants "did participate actively in the prior state criminal prosecution by initiating and controlling the contact between them and the plaintiff; by presenting the charges against the plaintiff; and, by acting as the only witnesses against the plaintiff. Indeed, here there was no independent crime apart from the contact among the plaintiff

11

and defendants, and the prosecution depended entirely and exclusively upon defendants, who had authority to act for the state, in its name, and who decided how the prosecution would, and did, proceed." Doc. 72, Plaintiff's Additional Brief, at 4:8-14.  These actions do not suffice to constitute privity.  As stated by the Ninth Circuit, being a witness for the prosecution does not create privity.  Further, Plaintiff does not show how Defendants had authority to determine whether to prosecute.  Plaintiff himself notes that it was the office of the California Attorney General that ultimately handled the case. Doc. 72, Plaintiff's Additional Brief, at 4:18-20.

**C. Federal Case Law**

In general, federal precedent supports the conclusion that there is no privity in this case. Plaintiff claims that no Ninth Circuit case is directly on point. Doc. 20, Pls.' Brief, at 5:18-19. Though there is no Ninth Circuit precedent that is binding, that court has not been completely silent on the issue.  In an older Section 1983 suit against police officers, the Ninth Circuit determined that a plaintiff was not allowed to assert issue preclusion on the issues of consent to entry and probable cause to search though these issues had been adjudicated in favor of plaintiff when his criminal conviction was overturned on appeal: "The defendants were city police officers not directly employed by the state; they had no measure of control whatsoever over the criminal proceeding and no direct individual personal interest in its outcome. In these circumstances there was no privity sufficient to invoke the doctrine of collateral estoppel." Davis v. Eide, 439 F.2d 1077, 1078 (9th Cir. 1971).  The case pre-dated the U.S. Supreme Court's declaration in Migra that federal courts must look to state law to determine preclusive effect. Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81 (1984).  With Eide, it is unclear whether the ruling was based on federal or California standards of issue preclusion. Nevertheless, the reasoning of Eide's holding is in accord with California privity standards. Having independently reviewed the logic behind Eide, this court concludes that it remains good law.

While the issue of privity must be determined with reference to California law, when dealing with issue preclusion, "it is often appropriate to look to the law as it is generally applied

in other jurisdictions for additional guidance [unless]...the state-law question is not a particularly difficult one." Haring v. Prosise, 462 U.S. 306, 314 (1983).  California law on privity is anything but clear cut.  In looking at issue preclusion in other states, the majority of federal courts have come to the conclusion that privity does not exist between law enforcement officers and the criminal prosecution. See, e.g., Kinslow v. Ratzlaff, 158 F.3d 1104, 1106 (10th Cir. 1998) (applying Oklahoma law); Tierney v. Davidson, 133 F.3d 189, 195 (2d Cir.1998) (applying Vermont law);  Kraushaar v. Flanigan, 45 F.3d 1040, 1050-51 (7th Cir. 1995) (applying Illinois law); Smith v. Holtz, 30 F. Supp. 2d 468, 477 (M.D. Pa. 1998) (applying Pennsylvania law).  The Eighth Circuit, in a case applying North Dakota law, has found privity to exist between police officers and the criminal prosecution. Patzner v. Burkett, 779 F.2d 1363, 1369 (8th Cir. 1985) ("the deputies in this case can be properly considered in privity with the state in the prior adjudication and thus bound by the state court's determination that the arrest was illegal"). However, the Eighth Circuit's decisions dealing with other states' laws have followed the majority view. See Turpin v. County of Rock, 262 F.3d 779, 782-83 (8th Cir. 2001) (applying Nebraska law, "Collateral estoppel cannot be used against the officers in our case, as the officers were neither parties nor in privity with the State in the criminal action and did not have a full and fair opportunity to litigate the issues in the criminal action."); Duncan v. Clements, 744 F.2d 48, 51 (8th Cir. 1984) (applying Missouri law, "collateral estoppel is not appropriate in this case because [police officer], the party against whom collateral estoppel is asserted, was neither a party nor in privity with a party to the prior state criminal proceeding").

Plaintiff's motion for summary adjudication on this issue is denied.  The California Supreme Court decision in People v. Willis does not have preclusive effect relative to the Defendants.

### IV. Conclusion

Plaintiff's motion for summary adjudication is DENIED.

IT IS SO ORDERED.

**Dated:   December 16, 2005**                    /s/ Anthony W. Ishii

0m8i78                                    UNITED STATES DISTRICT JUDGE