1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8
9   GARY WILLIS,                          CASE NO. CV-F-04-6542 AWI LJO
10              Plaintiff,                 **ORDER ON DEFENDANT'S MOTION
                                          FOR A PROTECTIVE ORDER**
11          vs.
12   JOSEPH MULLINS, et al.,
13              Defendant.
     _____/
14

15          In this 42 U.S.C. § 1983 action alleging unlawful search and arrest, defendant City of Bakersfield

16   seeks a protective order for its F.R.Civ.P. 30(b)(6) deposition.  This Court issued an order shortening

17   time on this motion and stayed the February 2, 2006 deposition.  Defendant City of Bakersfield filed its

18   motion on January 26, 2006.  Plaintiff Gary Willis filed his opposition on February 3, 2006.  Pursuant

19   to Local Rule 78-230(h) and the agreement of the parties, this matter is submitted on the pleadings

20   without oral argument.  Therefore, the hearing set for February 8, 2006 is vacated.  Having considered

21   the moving and opposition papers, as well as the Court's file, the Court issues the following order.

22                        **FACTUAL AND PROCEDURAL BACKGROUND**

23          Plaintiff Gary Willis proceeds on his first amended complaint to allege that Officer Mullins

24   falsely told defendant California Parole Officer Diane Mora that Mr. Willis was on parole and that

25   Officer Mora arranged for several officers, including Officers Mullins and Silvius, to search a motel

26   room which Mr. Willis occupied on March 27, 1996.  Based on evidence collected from the search, Mr.

27   Willis was convicted of a felony and was incarcerated more than six years before his conviction was

28   overturned. Mr. Willis' first amended complaint alleges Officers Mullins and Silvius unlawfully entered

                                          1

1  Mr. Willis' motel room, unlawfully arrested Mr. Willis and searched him and his property, and falsely
2  charged him with crimes.

3          On January 13, 2006, plaintiff noticed the deposition of the City of Bakersfield or the person
4  most knowledgeable pursuant to F.R. Civ. P. 30(b)(6) on the subjects: the subject incident; the personnel
5  complaints of defendants Mullins and Silvius for the 10 years preceding March 27, 1996; any complaint
6  concerning "conduct potentially violative of the Fourth Amendment" for a 10 year period before March
7  27, 1996; any complaint concerning "conduct potentially violative of the Fourth Amendment" since
8  March 27, 1996 to the present; all lawsuits against the City of Bakersfield concerning allegations of
9  either the Fourth or Fourteenth Amendments, etc.

10 **Judge Ishii's ruling on the *Monell* claim**

11         Plaintiff's fourth claim stated a *Monell* violation under 42 U.S.C. §1983 for numerous policy and
12 custom deficiencies.  On Defendant City's Rule 12(b)(6) motion, the Court found that only a limited
13 portion of the claim was adequately plead, as follows: "Plaintiff specifically alleges that the Bakersfield
14 Officials 'have a custom of improperly indemnifying, and of conspiring to indemnify police officers, for
15 punitive damages assessed against those officers by juries in civil rights cases, because [sic] that practice
16 was a moving force that caused the violations of the plaintiff's rights as alleged herein.'"(April 18, 2005
17 Order p.10:13-18.)  It is this claim which is the subject of the Rule 30(b)(6) deposition notice.

18                                    **ANALYSIS & DISCUSSION**

19         Defendant requests a protective to limit the scope of the examination.  The City also seeks a
20 protective order requiring that this deposition be taken in Bakersfield.

21 **A.     Protective Orders**

22         Under F.R.Civ.P. 26(c), this Court "may make any order which justice requires to protect a party
23 or person from annoyance, embarrassment, oppression, or undue burden or expense," including:

24         1.      Prohibiting disclosure or discovery;

25         2.      Conditioning disclosure or discovery on specified terms, "including a designation of the
26                 time or the place";

27         3.      Permitting discovery be had by a method other than selected by the party seeking
28                 discovery; or

1        4.      Limiting the scope of disclosure or discovery to certain matters.

2   To enforce the limit on discovery, a parties may seek a protective order under Fed.R.Civ.P.26© or the

3   court may act upon its own initiative.

4        To obtain a protective order, the party resisting discovery or seeking limitations must show "good

5   cause" for its issuance.  F.R.Civ.P. 26( c); *Jepson, Inc. v. Makita Elec. Works, Ltd,* 30 F.3d 854, 858 (7th

6   Cir. 1994).  Generally, a party seeking a protective order has a "heavy burden" to show why discovery

7   should be denied and a strong showing is required before a party will be denied the right to take a

8   deposition.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  "If the motion for

9   protective order is denied in whole or in part, the court may, on such terms and conditions as are just,

10  order that any party or other person provide or permit discovery."  F.R.Civ.P. 26( c).

11       Alternatively, a court may limit the "extent of use of discovery methods" if it determines "the

12  party seeking discovery has had ample opportunity by discovery in the action to obtain the information

13  sought."  F.R.Civ.P. 26(b)(2)(ii).

14  **B.      Municipal Liability under *Monell***

15       The discovery at issue is related to plaintiff's *Monell* claim.  The basic rule of liability is "local

16  governing bodies . . .  can be sued directly under §1983 for monetary, declaratory, or injunctive relief

17  where, as here, the action that is alleged to be unconstitutional implements or executes a policy

18  statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

19  *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). In *Monell v. Department*

20  *of Social Services*, the Supreme Court set forth the "policy and custom" requirements of municipal

21  liability, holding that municipal liability cannot rest on the actions of the employees under a respondeat

22  superior theory.  Plaintiff must show that their conduct represents county policy. *See Canton v. Harris*,

23  489 U.S. 378, 109 S.Ct. 1197 (1989) (inadequate police medical training representing a city policy may

24  serve as basis for §1983 case).

25       A "rule or regulation promulgated, adopted, or ratified by a local governmental entity's

26  legislative body unquestionably satisfies *Monell*'s policy requirements." *Thompson v. City of Los*

27  *Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). Official policy may derive from "a decision properly made

28  by a local governmental entity's authorized decisionmaker – i.e., an official who 'possesses final

3

1    authority to establish [local government] policy with respect to the [challenged] action.'" *Thompson*, 885

2    F.2d at 1443 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. at 1299 (1986)

3    (plurality opinion). "The existence of a policy, without more, is insufficient to trigger local government

4    liability under section 1983." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). "Only if a plaintiff

5    shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury

6    resulting from a local government custom." *Thompson*, 885 F.2d at 1444. "[O]fficial policy must be

7    'the moving force of the constitutional violation' in order to establish the liability of a government body

8    under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436

9    U.S. at 694, 98 S.Ct. 2018).

10   **C.    The Areas of Inquiry at Issue in the Deposition Notice**

11          Plaintiff argues, that in light of Judge Ishii ruling, the areas of inquiry at issue are 1, 3, 4, 5, 6:

12          1.  The personnel and complaint records of defendants Mullins and Silvius, for the 10 year period

13   immediately preceding March 27, 1996 and including the incident in this action.

14          3.  For the 10 year period before March 27, 1996, incidents in which it has been alleged or

15   complaints made that Bakersfield police officers have engaged in conduct potentially violative of the

16   Fourth Amendment.

17          4.  For the period March 27, 1996 to date, incidents in which it has been alleged or complaint

18   made that Bakersfield police officers have engaged in conduct potentially violative of the Fourth

19   Amendment.

20          5.  Incidents in which it has been alleged or complaint made, either internally or in a lawsuit, that

21   any Bakersfield police officers have engaged in conduct potentially violative of the Fourteenth

22   Amendment.

23          6.  All lawsuits against the City of Bakersfield or any Bakersfield police officers in which there

24   was an allegation of violations of either the Fourth or Fourteenth Amendments, including the claims,

25   the results, and if any money was paid out by the City.

26   /////

27   /////

28   /////

4

**D.      City's General Objections**

In City's Points and Authorities, City objected to the areas of inquiry as "impermissibly vague and ambiguous, oppressive and burdensome, calls for a legal conclusion and violative of the attorney work product privilege."

It is well-settled that all grounds for objection must be stated with specificity. Most of defendants' objections are too general to merit consideration and are therefore waived. *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D.Cal. 2005).

Nonetheless, areas of inquiry 3, 4, and 5 are irrelevant and are too broad for the scope of the alleged violation. The only incident that could impose violations of the Fourth or Fourteenth amendment is the policy of payment of punitive damages by the City which motivated the officers at issue. The other areas of inquiry are irrelevant because they ask for "allegations or complaints."

**E.      *Monell* "Moving Force" requirement and Post-Incident Areas of Inquiry**

Plaintiff argues that he should be able to find out about payment of punitive damages - after the incident "because this would be evidence to support plaintiff's *Monell* claims." (Plaintiff's opposition brief p.3:17-20.)   He argues he should not be limited to evidence of pre-incident punitive damages payments.

Plaintiff is correct, as a general proposition, that post incident events may prove that a policy or custom existed pre-incident.  Plaintiff cites to numerous cases in support of his argument.  In *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir.1997), *amended on denial of rehearing*, 137 F.3d 1372, *cert. denied*, 525 U.S. 819, 119 S.Ct. 59, 142 L.Ed.2d 46 (1998), the court held that post-event conduct is "highly probative" to proving the existence of a municipal policy or custom. For example, a "[p]olicy or custom may be inferred if ... officials took no steps to reprimand or discharge the [officers involved], or if they otherwise failed to admit the [officers'] conduct was in error." See also *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error.)  "The disposition of the policymaker may be inferred from his conduct after the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes

had been made in their policies. If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger." *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985). "[T]he subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." *Id.*

Thus, post-incident indemnification of punitive damages is probative of the existence that the policy existed pre-incident. From this post-incident evidence, which the jury may imply the existence of a pre-incident policy, the evidence may also infer knowledge and moving force. Although tenuous, plaintiff would be able to argue from this evidence that the officers were aware of the pre-incident policy, and was therefore a moving factor in their conduct. To be the moving force, the "identified deficiency" in the County's policies must be "closely related to the ultimate injury." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1196 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003), citing *City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197 (1989). In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity not indemnified officers. *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained the officers). Post-incident evidence is relevant to the <u>existence</u> of a custom or policy, from which a plaintiff may argue it was the <u>moving force</u> in the alleged unconstitutional violation. Therefore, post-incident indemnification of police officers is relevant and probative.

**F.     <u>Peace Officer Privacy Rights</u>**

The question remains whether plaintiff should be permitted to inquire into the broad scope of areas requested. In the deposition notice, area of inquiry 1 asks for officer Mullins' and Silvius' personnel records. And, within each of the other areas of inquiry is an implicit request for police officer records.

California Code of Civil Procedure section 823.7 addresses disclosure of peace officer personnel records and provides in pertinent part:

> (a) Peace officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed by the department or agency that employs the

6

1    peace officer in any criminal or civil proceeding except by discovery pursuant to Sections
2    1043 and 1046 of the Evidence Code.

3    California Code of Civil Procedure section 832.8(e) defines personnel records to include: "Complaints,

4    or investigations of complaints, concerning an event or transaction in which he or she participated, or

5    which he or she perceived, and pertaining to the manner in which he or she performed his or her duties."

6    California Government Code section 6254( c) and (f) bar disclosure of personnel files, the

7    disclosure of which would constitute an unwarranted invasion of personal privacy, and records of

8    complaints to or investigations conducted by a local police agency.

9    Federal courts ordinarily recognize a constitutionally based right of privacy can be raised in

10   response to a discovery request. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir.

11   1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255 (1993).   In California, the right to privacy is set forth

12   in Article I, Section I of the California Constitution.  It is not an absolute right but a right subject to

13   invasion depending on the circumstances. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.

14   Cal. 1998); *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37, 26 Cal.Rptr.2d 834, 857 (1994).

15   The custodian of private information may not waive the privacy rights of persons who are

16   constitutionally guaranteed their protection. *Board of Trustees of Leland Stanford Junior University v.*

17   *Superior Court*, 119 Cal.App.3d 516, 526, 174 Cal.Rptr. 160, 164-165 (1981).

18   The entirety of the officers' file, and everything related to the officers, are irrelevant to the

19   *Monell* issues of the existence of a policy for indemnification of punitive damages and whether the

20   policy was the moving force for the action of the officers.  However, the limited area of inquiry

21   regarding indemnification of punitive damages would be relevant and probative of the *Monell* claim.

22   On balance, there is no other way plaintiff could obtain this evidence.  A limited area of inquiry of only

23   this information would protect the privacy of other personnel information.

24   **G.    Place Of Depositions**

25   The notice of deposition states that the deposition will take place at plaintiff's counsel's office

26   which is located in Venice, California.

27   Generally, noticing parties have discretion where to set depositions.  "Usually, a party seeking

28   discovery may set the place where the deposition will take place, subject to the power of the courts to

7

grant a protective order designating a different location." *Philadelphia Indemnity Ins. v. Federal Ins. Co.*, 215 F.R.D. 492, 495 (E.D. Pa. 2003) (citing several cases); *see Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D. N.C. 1988) (generally, the deposition of a party or its officers may be noticed wherever the deposing party designates, subject to a court's power to grant a protective order).

Courts presume that a defendant's deposition will proceed at his place of residence, business or employment:

> Although the federal rules do not prevent plaintiff's designating any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment; if another place is named and defendant files a timely objection the objection should be sustained absent some unusual circumstance to justify putting the defendant to such inconvenience.

*Grey v. Continental Marketing Assocs.*, 315 F.Supp. 826, 832 (N.D. Ga. 1970).

If the parties cannot resolve disputes regarding location, a protective order may be obtained. F.R.Civ.P. 26( c). "The Court has considerable discretion in determining the place of a deposition, may consider the relative expenses of the parties and may order that expenses be paid by the opposing party." *Generale Bank Nederland N.V. v. First Sterling Bank*, 1997 WL 778861, at 2 (E.D. Pa. 1997). "The Court is permitted to exercise a broad discretion in determining the appropriate place for examination and may attach conditions such as payment of expenses." *Turner*, 119 F.R.D. at 383. Although a presumption exists to depose a defendant at his residence or place of business, "a number of factors serve to dissipate the presumption and may persuade the Court to require the deposition to be conducted in the forum district or some other place. . . . Ultimately, the Court must consider each case on its own facts and the equities of the particular situation." *Turner*, 119 F.R.D. at 383 (citations omitted.)

Factors which a court may consider include:

1.      The parties' convenience and relative hardships to attend the designated location;

2.      Cost of transportation and lost work to defendant;

3.      Expense and inconvenience to move voluminous documents;

4.      Whether the parties' counsel are located in the forum district;

5.      Whether the defendant is a large corporation whose employees often travel;

6.  Whether significant discovery disputes may arise and judicial economy favors resolution by the forum court or other similar concerns; and

7.  Whether the parties' claims and parties' relationship are such that appropriate adjustment of the equities favors a deposition site in the forum district.

*Turner*, 119 F.R.D. at 383 (citing several cases); *Wisconsin Real Estate Inv. Trust v. Weinstein*, 530 F.Supp. 1249, 1254 (E.D. Wis. 1982).

Defendant has shown that the deposition should take place in Bakersfield. The potential deponents for the City would reside in the Bakersfield area. Travel of the deponents to the Los Angeles area is a consideration. The action is pending in this District and the incident occurred in Bakersfield. Accordingly, the deposition should occur in Bakersfield.

Plaintiff argues that he did not select this Court as venue and should not be forced to conduct depositions in this District.

Here, plaintiff filed the action in the Central District of California, Western Division, which transferred the action to this District. The proper venue for this action is in this District.

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. §1391.

The proper venue for the case was in this District and not the Central District.

Plaintiff asks that if the depositions are ordered in Bakersfield, the Court permit plaintiff to select the location. The Court will grant the request, in part. The parties must agree to the date and place of the deposition. Should the parties be unable to agree, the deposition will be noticed for the business address for the Court reporter selected by plaintiff, which must be within the City of Bakersfield's boundaries.

/////

9

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for a Protective Order:

**Scope of Deposition:**

GRANTS the protective order as to the area of inquiry 1, 3, 4, and 5 of the Deposition Notice.

GRANTS in part and DENIES in part the protective order as to the area of inquiry 6 of the Deposition Notice and limits the inquiry to the custom or policy of indemnifying police officers for punitive damages assessed against those officers by juries in civil rights cases.

**Place of Deposition:**

GRANTS the protective order that the place of the deposition shall be in Bakersfield at a date, time and place mutually acceptable to the parties.

If the parties are unable to agree to a location, the deposition will be noticed for the business address for the Court reporter selected by plaintiff, which must be within the City of Bakersfield's boundaries.

IT IS SO ORDERED.

**Dated:    February 8, 2006**                         **/s/ Lawrence J. O'Neill**
b9ed48                                          UNITED STATES MAGISTRATE JUDGE

10