**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY WILLIS,⟩ | CIV-F-04-6542 AWI GSA |
| ⟩ | |
| Plaintiff,⟩ | ORDER RE: SUMMARY |
| ⟩ | ADJUDICATION AND |
| v.⟩ | RECONSIDERATION |
| ⟩ | |
| JOSEPH MULLINS, et al.,⟩ | |
| ⟩ | |
| Defendants.⟩ | |
| ⟩ | |

Defendants have made three motions for summary adjudication.  Plaintiff has made a motion for reconsideration.  All motions deal with related matters.  The motion for reconsideration is denied and the motions for summary adjudication are granted in part and denied in part.

## I. History

Gary Willis ("Plaintiff") was a registered occupant of the E-Z 8 Motel in Bakersfield, CA on March 27, 1996.  Police received reports of heavy traffic from that room and were informed it was registered under Plaintiff's name.  The Defendants are four law enforcement officers form different departments who were sent to investigate: Bakersfield Police Officer Joseph Mullins, Bakersfield Police Officer Silvius, Kern County Deputy Sheriff Hood, and California State

Parole Officer Diane Mora.[1]  Defendant Mullins consulted a list of parolees generated by the California Department of Corrections and distributed to local police departments on a roughly monthly basis ("Parole Roster").  He presented the Parole Roster to Defendant Mora; she confirmed the Parole Roster indicated that Plaintiff was on parole and subject to search.  After announcing their presence and entering the motel room, Defendants found two individuals inside, Plaintiff and Kathleen Moye.  Also visible were a knife, a syringe, and a briefcase.  Defendants announced the commencement of a parole search.  Plaintiff informed Defendant Mullins he was no longer on parole and provided his parole discharge card.  Defendant Mora left to seek telephone confirmation of Plaintiff's parole status.  In fact, Plaintiff had been discharged from parole nine months prior.  While the call was taking place, Defendant Mullins detained Plaintiff outside the motel room while Defendants Silvius and Hood talked with Ms. Moye inside the room.  Ms. Moye admitted to recently using methamphetamine, stated that she put a speed pipe in the briefcase, and consented to search of the briefcase.  Defendant Mullins brought Plaintiff back into the room.  Defendants Mullins, Silvius, and Hood opened the briefcase and found methamphetamine, speed pipes, syringes, set of scales, small plastic bags, spoons, and pay-owe sheets.  At some point, Defendant Mora returned and informed Defendant Mullins that Plaintiff was not on parole.  Defendants arrested Plaintiff and Ms. Moye.

Plaintiff made a motion to suppress evidence, which the California trial court denied.  Based on evidence found within the motel room, Plaintiff was convicted of possession of methamphetamine for sale (Cal. Health & Safety Code § 11378) and possession of narcotics paraphernalia (Cal. Health & Safety Code § 11364).  He ultimately served six years in state prison.  On appeal, the Fifth District Court of Appeal found the entry unconstitutional and the good faith exception to the exclusionary rule inapplicable, but nonetheless affirmed the denial of suppression based on the finding that the officers had sufficient probable cause to search the briefcase based on Ms. Moye's statements to Defendant Silvius.  The Fifth District's rationale

---

[1]Officers Mullins and Silvius are employees of the City of Bakersfield ("Bakersfield Defendants").  They are jointly represented by counsel.  Defendant Hood and Defendant Mora each have separate counsel.

was that the "freeze" in search was a reasonable response to the uncertainty concerning Plaintiff's parole status. People v. Willis, 71 Cal. App. 4th 530, 541 (Cal. Ct. App. 1999).  On appeal, the attorney general conceded that the Fifth District's rationale for denying the motion to suppress was erroneous. People v. Willis, 28 Cal. 4th 22, 25 (Cal. 2002).  The California Supreme Court overturned Plaintiff's conviction on June 3, 2002, finding that evidence from the search must be suppressed as the good faith exception did not apply. People v. Willis, 28 Cal. 4th 22, 38 (Cal. 2002).   Plaintiff was released on August 31, 2002.

Thereafter, Plaintiff filed a civil suit based on a number of causes of action.  At this point, the only cause of action that remains is 42 U.S.C. §1983 against all Defendants.  When this suit was first brought, Plaintiff was unable to locate Defendant Hood; he was not brought into the case until a few years had passed.  As a result, Defendant Hood was not involved when the original motions for summary judgment were made.  Plaintiff first made a motion for summary adjudication, arguing that the California Supreme Court's decision in People v. Willis, 28 Cal. 4th 22 (Cal. 2002) had preclusive effect on the Defendants.  Plaintiff's motion for summary adjudication was denied. Doc. 81, December 21, 2005 Order.  The decision was certified for interlocutory appeal. Doc. 109, February 28, 2006 Order.  Plaintiff's petition for appeal was denied by the Ninth Circuit. Doc. 124.  Next, the Bakersfield Defendants and Defendant Mora made motions for summary judgment.  The court granted in part and denied in part, finding:

1. Defendants' initial entry into the motel room violated Plaintiff's constitutional rights. Qualified immunity on this issue can not be determined at this time.

2. Defendant Mora's actions in confirming Plaintiff's parole status once he produced his parole discharge card did not violate Plaintiff's constitutional rights.

3. Bakersfield Defendants' search of the briefcase did not violate Plaintiff's constitutional rights.

Doc. 172, September 25, 2007 Order, at 39:7-12.  Defendant Mora appealed the denial of qualified immunity for the initial entry as a matter of right.  The Ninth Circuit affirmed the denial of qualified immunity. Willis v. Mora, 314 Fed. Appx. 68 (9th Cir. 2009).

The parties were given a chance to file additional dispositive motions in order to clarify the issues for trial.  The Bakersfield Defendants, Defendant Mora, and Defendant Hood have

made motions for summary adjudication.  Plaintiff has made a motion for reconsideration.  The four motions deal with overlapping issues.  All motions are opposed.  The matters were taken under submission without oral argument.

## II. Legal Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden

1    of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th

2    Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing

3    party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec.

4    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party cannot "'rest

5    upon the mere allegations or denials of [its] pleading' but must instead produce evidence that

6    'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v.

7    Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

8           The evidence of the opposing party is to be believed, and all reasonable inferences that

9    may be drawn from the facts placed before the court must be drawn in favor of the opposing

10   party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad,

11   Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air,

12   and it is the opposing party's obligation to produce a factual predicate from which the inference

13   may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006);

14   UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of

15   material fact does not spring into being simply because a litigant claims that one exists or

16   promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d

17   15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007);

18   Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a

19   "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or

20   'is not significantly probative.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986);

21   Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has

22   the discretion in appropriate circumstances to consider materials that are not properly brought to

23   its attention, but the court is not required to examine the entire file for evidence establishing a

24   genuine issue of material fact where the evidence is not set forth in the opposing papers with

25   adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.

26   2003).  If the non-moving party fails to produce evidence sufficient to create a genuine issue of

27   material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine Ins.

28   Co. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

**IV. Discussion**

**A. Reconsideration**

In the summary judgment order, the court stated "Based on the consent of Ms. Moye, the searching of the briefcase did not violate Plaintiff's constitutional rights." Doc. 172, Sept. 25, 2007 Order, at 36:22-23.  Plaintiff now seeks reconsideration, arguing that (1) Ms. Moye's consent was tainted by Defendants' prior actions and (2) Ms. Moye lacked the authority to consent to the search of the briefcase.  These are legal arguments Plaintiff did not raise in opposing summary judgment.[2]  Defendants object to reconsideration on the grounds that Plaintiff fails to meet the applicable standard under Fed. Rule Civ. Proc. 60. See Docs. 252 and 253. Plaintiff argues that "in applying to the court for permission to make his motion for reconsideration on the issue of the search of plaintiff's briefcase, plaintiff thoroughly briefed the Court on why reconsideration of that issue was necessary in Plaintiff's Pretrial Memorandum of Points and Authorities With Respect to the Issues Remaining in this Action (Doc. #230), and, based upon that briefing, and oral argument, on October 4, 2010, the Court orally granted plaintiff permission to file the instant motion for reconsideration as to the briefcase issue." Doc. 258, Reply, at 3:12-19.  It is not clear, but Plaintiff may have misconstrued this court's purpose in permitting a motion for reconsideration.  There were outstanding legal issues in this case that

---

[2]In the briefing for the summary judgment, the totality of Plaintiff's arguments on this point reads:

> The plaintiff was then asked for the combination to his briefcase, which he refused to give to the defendants. This showed no consent, apparent, implied, or actual....Defendant Silvius responded that the defendants did not need plaintiff's permission for a search because Moye had admitted to being under the influence and that she had placed her things in plaintiff's briefcase. Defendant Silvius' contention that Moye consented to Silvius retrieving her speed pipe from the briefcase is inadmissible hearsay. Defendant Silvius broke the latch on plaintiff's briefcase, stating that plaintiff's permission was not needed and opened it. The breaking into the briefcase is inconsistent with the assertion of consent to open it.

Doc. 148, at 17:11-24, citations omitted.  The only arguments raised were that Plaintiff himself did not consent and that there was insufficient evidence of Ms. Moye's consent.

were best dealt with before trial.  The court set out a briefing schedule to allow additional

motions for summary judgment to resolve those issues.  In order to give Plaintiff's request for

reconsideration a full and fair hearing, Plaintiff was orally granted permission to file a formal

motion on the same briefing schedule.  That permission does not waive the applicable legal

standard.

Defendants argue Plaintiff has not met the requirements of Fed. Rule Civ. Proc 59, 60, or

Local Rule 230.  Plaintiff responds that the applicable standard is encapsulated in Fed. Rule Civ.

Proc. 54.  Local Rule 230(j) states:

> Whenever any motion has been granted or denied in whole or in part, and a subsequent
> motion for reconsideration is made upon the same or any alleged different set of facts,
> counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion
> is made an affidavit or brief, as appropriate, setting forth the material facts and
> circumstances surrounding each motion for which reconsideration is sought, including:
> (1) when and to what Judge or Magistrate Judge the prior motion was made; (2) what
> ruling, decision, or order was made thereon; (3) what new or different facts or
> circumstances are claimed to exist which did not exist or were not shown upon such prior
> motion, or what other grounds exist for the motion; and (4) why facts or circumstances
> were not shown at the time of the prior motion.

Plaintiff has not followed Local Rule 230's prescriptions in that there is no explanation for why

the legal arguments advanced were not included in the original briefing on the summary

judgment motion.  However, the filing does provide enough information for a ruling.  Similarly,

the disagreement regarding which rule governs the motion is not important as the legal standards

advanced by the parties are congruent.

> With respect to non-final orders, such as the Partial Judgment, the Ninth Circuit has
> recognized that as long as a district court has jurisdiction over the case, then it possesses
> the inherent procedural power to reconsider, rescind, or modify an interlocutory order for
> cause seen by it to be sufficient. This inherent power is grounded in the common law and
> is not abridged by the Federal Rules of Civil Procedure. In addition to the inherent power
> to modify a non- final order, Rule 54(b) authorizes a district court to revise a non-final
> order at any time before entry of a judgment adjudicating all the claims....As to inherent
> authority, a district court may reconsider and modify an interlocutory decision for any
> reason it deems sufficient, even in the absence of new evidence or an intervening change
> in or clarification of controlling law. But a court should generally leave a previous
> decision undisturbed absent a showing that it either represented clear error or would work
> a manifest injustice. Rule 54(b) does not address the standards which a court should apply
> when assessing a motion to modify an interlocutory order; however, courts look to the
> standards under Rule 59(e) and Rule 60(b) for guidance.

Jadwin v. County of Kern, 2010 U.S. Dist. LEXIS 30949, *25-27 (E.D. Cal. Mar. 31, 2010),

1  citations and quotations omitted.  "A motion for reconsideration should not be granted, absent

2  highly unusual circumstances, unless the district court is presented with newly discovered

3  evidence, committed clear error, or if there is an intervening change in the controlling law." 389

4  Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

5      Plaintiff specifies that "the prior order may be clearly erroneous and hence result in an

6  'useless trial.'" Doc. 258, Reply, at 4:19-20.  Plaintiff does not appear to make any argument that

7  the controlling law has changed or that special circumstances in this case would work a manifest

8  injustice.  Regarding clear error, "the standards for review embodied in Rules 54(b) and 60(b) are

9  complementary." Labastida v. McNeil Techs., Inc., 2011 U.S. Dist. LEXIS 18605, *5 (S.D. Cal.

10  Feb. 25, 2011).  Review of law under the clear error standard is not de novo. See McDowell v.

11  Calderon, 197 F.3d 1253, 1255-56 (9th Cir. 1999) ("The question being a debatable one, the

12  district court did not commit clear error").  "Although the definition of clear error we have

13  employed in differing contexts varies to some extent, it generally allows for reversal only where

14  the court of appeals is left with a 'definite and firm conviction' that an error has been

15  committed." Tuan Van Tran v. Lindsey, 212 F.3d 1143, 1153 (9th Cir. 2000), citations omitted.

16  The Ninth Circuit has warned that "The meaning of the 'clearly erroneous as a matter of law'

17  standard of review is elusive at best." In re Cement Antitrust Litigation, 688 F.2d 1297, 1305

18  (9th Cir. 1982).

19      As a general matter, a motion to reconsider is not a vehicle for parties to make new

20  arguments that could have been raised in their original briefs. See Zimmerman v. City of

21  Oakland, 255 F.3d 734, 740 (9th Cir. 2001).  However, when refusal to consider an argument

22  results in clear legal error, courts should exercise their discretion to consider the matter. See

23  United States v. Navarro, 972 F. Supp. 1296, 1300 (E.D. Cal. 1997) ("While the court has

24  discretion to consider a waived Teague defense, the standards applicable to a motion for

25  reconsideration articulated above counsel restraint in the entertaining of arguments which the

26  government could have raised earlier, unless the refusal to reconsider would result in clear legal

27  error").  Similarly, another court stated, "A change in a litigant's legal position is not one of the

28  extraordinary circumstances justifying a motion to reconsider and suggests why such motions are

1  generally discouraged" while analyzing the new legal argument under the clear error standard

2  anyway. <u>Winnemucca Farms, Inc. v. Eckersell</u>, 2009 U.S. Dist. LEXIS 41121, *5 (D. Nev. May

3  12, 2009).  Further, the fact that the issue Plaintiff seeks to have reconsidered is also before the

4  court on Defendant Hood's contemporaneous motion for summary adjudication strongly weighs

5  in favor of fully considering the merits.

6

7  **B. Fruit of the Poisonous Tree Doctrine in the Section 1983 Context**

8    "It is well established that, under the 'fruits of the poisonous tree' doctrine, evidence

9  obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is

10  inadmissible, despite a person's voluntary consent, unless the evidence obtained was purged of

11  the primary taint." <u>United States v. Washington</u>, 490 F.3d 765, 774 (9th Cir. 2007), citations and

12  quotations omitted.  "[T]he Fourth Amendment's exclusionary rule applies to statements and

13  evidence obtained as a product of illegal searches and seizures. Evidence obtained by such illegal

14  action of the police is 'fruit of the poisonous tree,' warranting application of the exclusionary

15  rule." <u>United States v. Crawford</u>, 372 F.3d 1048, 1054 (9th Cir. 2004).  Plaintiff argues "at the

16  time that the defendants were able to see into Willis' motel room after they had ordered plaintiff

17  to open the motel room door, they effected an illegal search. It is against this backdrop of an

18  illegal search that the consent purportedly given by Moye to open plaintiff's briefcase must be

19  examined." Doc. 253, at 10:10-13.  None of the Defendants have provided any briefing on this

20  issue.

21    As framed by Plaintiff, the initial entry by Defendants in reliance on the Parole Roster

22  constituted the illegal search which tainted Ms. Moye's consent.  This court has found as a matter

23  of law that the initial entry was unconstitutional with the question of qualified immunity to be

24  decided by a jury.  Plaintiff is correct that a third party's consent can be suppressed as a fruit of

25  the poisonous tree.  When the third party who gives consent is aware of the police actions which

26  constitute the Fourth Amendment violation, the consent must be suppressed under the fruit of the

27  poisonous tree doctrine. See <u>United States v. Oaxaca</u>, 233 F.3d 1154, 1158 (9th Cir. 2000)

28  ("Having concluded that the entry into Oaxaca's garage violated the Fourth Amendment, we turn

now to the question of whether Oaxaca's illegal arrest tainted Nancy's consent to search his

bedroom. Although the district court concluded that her consent was voluntary, the mere fact of

voluntariness does not mean that a consent is not tainted by a prior Fourth Amendment violation.

Consent by a defendant or a third party is tainted where the evidence indicates that it stemmed

from the prior illegal Government action. For example, where the person who offers the consent

knew of the prior illegal action, his consent may be considered tainted, and evidence found must

be suppressed") citations and quotations omitted.  It is undisputed that Ms. Moye was present in

the hotel room when Plaintiff was confronted by Defendants.  As she witnessed the violation of

Plaintiff's constitutional rights, her consent must be suppressed in the context of a criminal

prosecution.

However, the consensus of the case law is that the fruit of the poisonous tree doctrine

does not apply to Section 1983 cases.  Courts have generally concluded that evidence gathered by

means of an initial Fourth Amendment violation can be used to justify later police action,

rendering the later action constitutional.  The Ninth Circuit has not ruled on the issue but other

courts have.  The Fifth Circuit has held that the exclusionary rule does not apply to Section 1983

causes of action. <u>Wren v. Towe</u>, 130 F.3d 1154, 1158 (5th Cir. 1997).  The Second Circuit has

stated more specifically that the fruit of the poisonous tree doctrine does not apply. <u>Townes v.</u>

<u>City of New York</u>, 176 F.3d 138, 149 (2nd Cir. 1999) ("The individual defendants here lacked

probable cause to stop and search Townes, but they certainly had probable cause to arrest him

upon discovery of the handguns in the passenger compartment of the taxicab in which he was

riding. The lack of probable cause to stop and search does not vitiate the probable cause to arrest,

because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a

§1983 claimant").  The Third Circuit has cited approvingly to <u>Townes</u> for that proposition.

<u>Hector v. Watt</u>, 235 F.3d 154, 157 (3rd Cir. 2000).  Within the ambit of the Ninth Circuit, two

opinions from the Central District of California have relied on <u>Townes</u> and <u>Wren</u> to conclude

that the doctrine does not apply in Section 1983 cases. See <u>Radwan v. County of Orange</u>, 2010

U.S. Dist. LEXIS 85132, *29-30 (C.D. Cal. August 18, 2010) ("the Court may not rely on earlier

constitutional violations and the doctrine of the fruit of the poisonous tree to support a finding

1  that the search of the vehicle was a separate constitutional violation"); <u>Reyes v. City of Glendale</u>,

2  2009 U.S. Dist. LEXIS 76323, *45 (C.D. Cal. July 23, 2009) ("plaintiff has failed to present

3  evidence that the traffic stop was unreasonable, and that, even if it were, this would not render

4  plaintiff's entire detention unreasonable").

5      In the context of a Section 1983 suit, the fact that Defendants' initial entry into the hotel

6  room was a Fourth Amendment violation does not require the suppression of any subsequent

7  evidence if it is otherwise constitutionally gathered.

8

9  **C. Ms. Moye's Consent to Search of the Briefcase**

10     Plaintiff also objects to the search of the briefcase on the grounds that Ms. Moye lacked

11  authority to consent.  In the original summary judgment, this court found that "The uncontested

12  facts are sufficient to show that Ms. Moye exercised some form of authority over the briefcase in

13  common with Plaintiff" and "Based on the consent of Ms. Moye, the searching of the briefcase

14  did not violate Plaintiff's constitutional rights." Doc. 172, at 36:2-3 and 36:22-23.  The ruling

15  was largely based on <u>United States v. Yarbrough</u>, 852 F.2d 1522, 1533-4 (9th Cir. 1988) and

16  <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974), which generally stated a third party could

17  consent to a search in some circumstances.  Plaintiff makes his argument based almost solely on

18  <u>United States v. Impink</u>, 728 F.2d 1228, 1234 (9th Cir. 1984) which stated circumstances under

19  which third party consent was insufficient.  <u>Impink</u> is a significant opinion in which the Ninth

20  Circuit laid out a framework for approaching the overall issue of third party consent.

21     In <u>Matlock</u>, the objecting party was arrested in the yard of a house in which he had rented

22  a room.  He was held in a police car while the police approached the front door and spoke with a

23  woman who said she shared the room with the objecting party.  She explicitly consented to the

24  search of the room.  The court approved of the search, concluding that consent can be given by "a

25  third party who possessed common authority over or other sufficient relationship to the premises

26  or effects sought to be inspected....[Common authority rests] on mutual use of the property by

27  persons generally having joint access or control for most purposes, so that it is reasonable to

28  recognize that any of the co-inhabitants has the right to permit the inspection in his own right and

that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Matlock, 415 U.S. 164, 171-72 n.7 (1974).

Impink sought to clarify and distinguish Matlock. The facts of the case are complex and lead to a confusing opinion. The landlady leased a property to a renter who employed a caretaker. The property had a house, a garage, and a locked entrance gate. The rental agreement allowed the landlady to store a space heater in the garage. While retrieving the heater, the landlady saw suspicious items. She went to the house where the caretaker told the landlady to leave as the property was private. The landlady went to a the nearby residence of a police officer and reported the suspicious items; when on duty officers arrived, she spoke with them but did not explicitly give them consent to search the property. The police then saw the renter drive by and enter the property. Without getting a warrant, the police breached the locked gate and visually examined the garage but did not enter it. They approached the front door where the renter consented to a search of the house but specifically denied consent to search of the garage. Shortly thereafter, the renter's attorney called to withdraw consent for search of the house. The renter and caretaker were detained while a search warrant was obtained. Evidence of methamphetamine production was found in the garage. The court was faced with the question "whether the narcotics agents were justified when they went on to [the] property without first procuring a warrant....the police chose not to obtain a warrant. Instead, they simply entered the premises....the government argues that [] the landlady, implicitly consented to the agents' search of the garage." United States v. Impink, 728 F.2d 1228, 1230-32 (9th Cir. 1984). Thus, the question was whether the landlady's implicit consent to search the garage was sufficient to allow the police to enter the overall premises. In context, the objectionable police action must have been the visual inspection of the outside of the garage from the curtilage of the house. The Ninth Circuit distinguished Matlock, finding four factual differences:

> Matlock thus leaves open three possible variables in the consent calculus. First, the third party may not generally have joint access for most purposes; his right of access may be narrowly prescribed. Second, the objector may not be an absent person; he may be present at the time third party consent is obtained. Finally, the objector may not simply be 'nonconsenting'; he may actively oppose the search. Each of these variables has been altered between Matlock and the case before us, and each change suggests that effective consent could not be given in this case. Additionally, the explicit consent in Matlock is

1   changed to implied consent here.

2   United States v. Impink, 728 F.2d 1228, 1233 (9th Cir. 1984).

3   The problems in applying Impink begin with the fact that the second and third factors are

4   not well specified; there are multiple possible interpretations of what they actually are.  The

5   second factor is the presence of the objecting party: "the objector may not be an absent person; he

6   may be present at the time third party consent is obtained."  United States v. Impink, 728 F.2d

7   1228, 1233 (9th Cir. 1984).  According to the facts of the case, the implicit consent was given

8   during an interview with the landlady at a nearby house.  Neither the renter nor caretaker were at

9   the interview.  Therefore, the "presence" in question can not be physical presence when the third

10  party consent is given.  The other possible interpretation of "presence" would be presence on the

11  premises to be searched at the time the consent was given.  Even under that definition, it is

12  evident that while the caretaker was at the property, the renter was out and about in his car at the

13  time.  Another possibility is that the Ninth Circuit misidentified the relevant time period.  It is

14  plausible that the court meant to inquire as to presence of the objecting parties at the time the

15  search was executed rather than time third party consent was given.  Both renter and caretaker

16  were on the premises when the police entered.  The discussion of the second factor in the opinion

17  supports this interpretation: "At every step of the investigation in this case, a person with a

18  privacy interest superior to [the landlady's] was present during the search....Thus, the police

19  knew that the lessee of the house was present when they began to search."  United States v.

20  Impink, 728 F.2d 1228, 1233-34 (9th Cir. 1984).  The same imprecision plagues the third factor:

21  "the objector may not simply be 'nonconsenting'; he may actively oppose the search."  United

22  States v. Impink, 728 F.2d 1228, 1233 (9th Cir. 1984).  This language suggests this factor is

23  active objection to the search at the time of the search.  However, the discussion in the opinion

24  focuses instead on whether the objecting parties objected to the third party's authority over the

25  property: "A third factor suggesting the [the landlady] could not give effective consent is [the

26  caretaker's] request that she leave the premises."  United States v. Impink, 728 F.2d 1228, 1234

27  (9th Cir. 1984).  Temporally, this is an event that took place before the landlady approached the

28  police.

13

In the case at hand, Ms. Moye had an inferior right to privacy in the briefcase, but her consent to search was explicit.  The second and third factors are mixed.  Technically, Plaintiff was not present when she gave her consent; he was being held outside by Defendant Mullins.  This is factually similar to Matlock where the police obtained consent from a co-inhabitant while holding the criminal defendant in a police car.  However, Plaintiff was present when the actual search of the briefcase took place.  The evidence is also ambiguous as to whether Plaintiff actively objected.  When deposed, Plaintiff said he refused consent of a general search of the motel room while held outside with Defendant Mullins; Plaintiff  then went on to describe what happened when they reentered the room:

> A. [Defendant Silvius] said Ms. Moye had admitted to being under the influence and that she put her things in the briefcase.
>
> Q. And did Officer Mullins respond?
>
> A. Yes.
>
> Q. What did he say?
>
> A. He looked at me and he said, 'You got anything to say about that?'
>
> Q. And what did you say?
>
> A. I said, 'If she did, I don't know nothing about it.'
>
> Q. And what happened next?
>
> A. They asked me what the combination was.
>
> Q. And did you give it to them?
>
> A. No.
>
> Q. And what happened next?
>
> A. Officer Silvius picked up my knife and broke the latch on the briefcase and said, 'We don't need his permission.'

Doc. 141, Part 6, at 32:8-33:1 (14-15 of 27).  Impink does not specifically state what actions are required for active objection.  In at least one case, silence in the face of an affirmative statement that a search will take place was considered implicit consent. See United States v. Canada, 527 F.2d 1374, 1376 (9th Cir. 1975).  In contrast, a statement that "I would but I can't [open the trunk]" has been found not to be consent. United States v. Patacchia, 602 F.2d 218, 219 (9th Cir.

1   1979).  At summary judgment, all reasonable inferences are made in favor of the non-moving

2   party; the circumstances are ambiguous so Plaintiff should be considered to have objected to the

3   search of the briefcase.  But, Plaintiff pointedly does not object to Ms. Moye's consent.  Insofar

4   as Impink's third factor is a statement by the objecting party that the third party lacks authority,

5   that is not present in the facts of this case.  Given the imprecision of the Impink factors, it is not

6   clear in which direction the second and third factors point.  Arguably, the third factor weighs in

7   favor of valid consent while the second does not.

8       The overall case law is not clear as to how the various factors should be considered as a

9   whole.  Impink's conclusion states "In some cases, courts have invalidated searches solely

10  because the consenting person had an insufficient right of access to the premises. Our holding

11  here, however, need not reach so far. Rather, we view the totality of the circumstances and

12  conclude that effective consent was precluded by the combined elements of this case. Where a

13  suspect is present and objecting to a search, implied consent by a third party with an inferior

14  privacy interest is ineffective." United States v. Impink, 728 F.2d 1228, 1234 (9th Cir. 1984),

15  citations omitted.  One Ninth Circuit opinion discussed the Impink factors in the context of a

16  landlord giving explicit consent to search a garage while the renter was not present and

17  concluded "the issue of consent turns upon whether the landlord had an equal right of access to

18  the premises." United States v. Warner, 843 F.2d 401, 403 (9th Cir. 1988).  This opinion could

19  be read to collapse the Impink test into the first factor.  Instead, the better interpretation is that

20  the opinion creates a bright line rule that "Landlords, however, do not have authority to waive the

21  fourth amendment's warrant requirement by consenting to a search of premises inhabited by a

22  tenant who is not at home at the time of a police call. The security of tenants' residences is not

23  dependent solely upon the discretion of landlords." United States v. Warner, 843 F.2d 401, 403

24  (9th Cir. 1988).  Impink appears to have purposefully avoided creating a strict rule, instead

25  relying on the totality of the circumstances.  The Ninth Circuit has recognized the underlying

26  vagueness of this field, describing the developing Impink case law as attempting to "wipe[] away

27  some of the fuliginous overlay that Matlock left." United States v. Morning, 64 F.3d 531, 535

28  (9th Cir. 1995).  Given the lack of clarity, the Impink framework is of limited import to this case

**15**

1   and can not be relied upon to provide a definitive answer.

2       Returning to <u>Matlock</u>, the U.S. Supreme Court has clearly stated that consent to search

3   can be given by "a third party who possessed common authority over or other sufficient

4   relationship to the premises or effects sought to be inspected....[Common authority rests] on

5   mutual use of the property by persons generally having joint access or control for most purposes,

6   so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the

7   inspection in his own right and that the others have assumed the risk that one of their number

8   might permit the common area to be searched." <u>United States v. Matlock</u>, 415 U.S. 164, 171-72

9   n.7 (1974).   The key fact in this case is that Ms. Moye told Defendant Silvius she placed drugs

10  into the briefcase.  Defendant Silvius has provided the following declaration:

11      5. I asked Kathleen Moye whether she was under the influence of methamphetamine. In
        response, Kathleen Moye admitted to me that she was under the influence of
12      methamphetamine and that she had just recently smoked it. When Kathleen Moye made
        her admission regarding the use of methamphetamine, I had not taken her into custody.
13

14      6. Kathleen Moye subsequently informed me that she had placed her 'speed pipe' in the
        briefcase.  The briefcase was in my direct line of sight and did not require me to open any
15      drawers, closet doors or enter any other room to observe it.

16      7. I understood Kathleen Moye's acknowledgment that she had placed her 'speed pipe' in
        the briefcase to mean that she either owned the briefcase or exercised control over it.

17      8. Because I believed Kathleen Moye either owned or exercised control over the
        briefcase, I asked her if I could retrieve the 'speed pipe' from it. Kathleen Moye agreed to
18      my request. Before I could open the briefcase, Sgt. Mullins and Gary Willis entered the
        motel room.
19
        9. When Sgt. Mullins entered the motel room, I immediately informed him that []
20      Kathleen Moye admitted that she was presently under the influence of methamphetamine.
        I further informed Sgt. Mullins that Kathleen Moye identified the briefcase where she
21      placed her 'speed pipe.'

22      10. Gary Willis did not disclaim any of Ms. Moye's statements regarding the location of
        the 'speed pipe.' Gary Willis simply stated that he had no knowledge concerning whether
23      she had placed her speed pipe in the briefcase.

24      11. I subsequently opened the briefcase on the belief that Kathleen Moye had authority to
        consent to a search of it and, in fact, consented to the search.
25

26  Doc. 141, Part 3, at 2:14-3:7.

27      In the context of searching a bag (as opposed to a residence), "A third party has actual

28  authority to consent to a search of a container if the owner of the container has expressly

**16**

1  authorized the third party to give consent or if the third party has mutual use of the container and

2  joint access to or control over the container. A third party has apparent authority to consent to a

3  search of a container if the officers who conduct the search reasonably believe that the third party

4  has actual authority to consent." United States v. Fultz, 146 F.3d 1102, 1105 (9th Cir. 1998),

5  citing United States v. Welch, 4 F.3d 761, 764 (9th Cir. 1993).  These cases discuss two

6  situations in which the third party had neither authority nor apparent authority.  In Fultz, the third

7  party allowed the objecting party to store some boxes in a garage; the third party "did not use the

8  boxes and she did not have, or even claim to have, a right of access to his boxes." United States

9  v. Fultz, 146 F.3d 1102, 1106 (9th Cir. 1998).  In Welch, the driver of a car did not have

10  authority over a passenger's bag held in the trunk: "any such belief [that third party had apparent

11  authority] would have necessarily rested on the erroneous legal assumption that the mere

12  presence of the handbag in the trunk gave McGee control over it or access to its contents, or, to

13  put it differently, that Welch's leaving the purse in the car gave McGee the right to open it

14  without her consent." United States v. Welch, 4 F.3d 761, 765 (9th Cir. 1993).  In the case at

15  hand, Ms. Moye used the briefcase without asking for or seeming to need Plaintiff's permission.

16  A party that needs to ask for permission to use an item is generally not considered to have the

17  authority to consent. Cf. United States v. Peden, 2007 U.S. Dist. LEXIS 61354, *21 (E.D. Cal.

18  Aug. 9, 2007) ("the fact that Frederick needed to seek defendant's permission to enter his

19  bedroom and use his computer is strong evidence that they had unequal access and control" over

20  the computer).  Actual use of a bag strongly suggests authority to consent. Cf. Frazier v. Cupp,

21  394 U.S. 731, 740 (1969) ("Since Rawls was a joint user of the bag, he clearly had authority to

22  consent to its search....Petitioner, in allowing Rawls to use the bag and in leaving it in his house,

23  must be taken to have assumed the risk that Rawls would allow someone else to look inside").

24  Similarly, physically holding a bag, even if the third party did not use it, has also been found

25  sufficient for authority to consent. See United States v. Canada, 527 F.2d 1374, 1379 (9th Cir.

26  1975).  In this case, Ms. Moye used the briefcase without Plaintiff's consent.  Plaintiff never

27  indicated in any way that she was not allowed to use it.  She had access to the briefcase to place

28  items in.  Though it was locked and Ms. Moye did not have the ability to unlock it, under the

1   circumstances Defendants reasonably believed Ms. Moye had authority to consent.

2          The U.S. Supreme Court has held "The Constitution is no more violated when officers

3   enter without a warrant because they reasonably (though erroneously) believe that the person who

4   has consented to their entry is a resident of the premises, than it is violated when they enter

5   without a warrant because they reasonably (though erroneously) believe they are in pursuit of a

6   violent felon who is about to escape." Illinois v. Rodriguez, 497 U.S. 177, 186 (1990).  "Even if

7   the consenting third party does not in fact possess actual authority to consent, a warrantless

8   search may be justified when the authorities have reasonable grounds to believe the consentor has

9   apparent authority to consent." United States v. Yarbrough, 852 F.2d 1522, 1534 (9th Cir. 1988).

10         Ms. Moye had at least apparent authority over the briefcase sufficient to consent to a

11  search.  Even if she did not, the unsettled state of the law means that Defendants are entitled to

12  qualified immunity on this issue.

13

14  **D. Arrest**

15         Based on the items found inside the briefcase, Defendants arrested Plaintiff and Ms.

16  Moye.  Again, the fruit of the poisonous tree doctrine does not apply in this circumstance. See

17  Medina v. Toledo, 718 F. Supp. 2d 194, 207 (D.P.R. 2010) ("While the search warrant itself may

18  have lacked probable cause, rendering the incriminating evidence fruits of the poisonous tree

19  subject to the exclusionary rule, the same rules that apply to criminal cases do not always apply

20  in the civil context...the exclusionary rule does not apply to the effect that it would nullify the

21  officers' probable cause to arrest Moreno").  The undisputed facts are:

22         55. The briefcase contained a hypodermic syringe containing a small amount of brown
            fluid that Officer Mullins believed contained methamphetamine, a blue plastic container
23          which contained about five grams of methamphetamine, two hypodermic syringes, a set
            of electronic gram scales, narcotic packaging consisting of several small pieces of clear
24          plastic and several Ziplock baggies, two glass methamphetamine smoking pipes, several
            spoons, and a handwritten pay-and-owe sheet.
25
    See Doc. 172, September 25, 2007 Order, at 24:12-17; Doc. 50, Plaintiff's Response to
26
    Defendant Mora's Statement of Undisputed Material Facts, at 13 (no dispute to Fact 55).  Based
27
    on that evidence, Defendants had sufficient cause to arrest Plaintiff.
28

On a related matter, Plaintiff, in an earlier filing, argued that Defendants violated the Fourth Amendment by seizing him after he had presented his parole discharge card, concluding that "all of the defendants are liable on the issue of false arrest." Doc. 230, Plaintiff's Pretrial Memorandum of Issues Remaining in this Action, at 11:4-12:13.  This issue was not raised in the motions for reconsideration and summary judgment; the issue will be addressed in order to forestall any future confusion.  In an earlier summary judgment order, this court found "Defendants' refusal to take Plaintiff's parole discharge papers at face value may be considered reasonable." Doc. 172, September 25, 2007 Order, at 35:6-7.  This court relied upon a Northern District of Illinois opinion in which a police officer was granted qualified immunity when he arrested a suspect pursuant to an arrest warrant though the suspect produced a copy of the warrant recall order, reasoning that "it was not unreasonable for defendant to doubt its authenticity." Lauer v. Dahlberg, 717 F. Supp. 612, 614 (N.D. Ill. 1989)."  Similarly, in this case, when Plaintiff presented the parole discharge card, it was not unreasonable for Defendants to investigate his parole status; Defendants were not required to give immediate credence to the paperwork Plaintiff provided.  For qualified immunity analysis, "the objective (albeit fact-specific) question [is] whether a reasonable officer could have believed [the police defendant's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987).  Though the parole discharge papers were genuine and accurately reflected the fact Plaintiff was no longer subject to a search condition, Defendants actions were lawful assuming they had a valid reason to believe Plaintiff was on parole.  Qualified immunity applies; the fact that Defendants seized Plaintiff while checking on his status does not constitute an independent basis for Plaintiff's Section 1983 suit.

**E. Malicious Prosecution**

"[A] claim of malicious prosecution is not cognizable under 42 U.S.C. §1983 if process is available within the state judicial system to provide a remedy. However, an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of

equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." <u>Usher v. Los Angeles</u>, 828 F.2d 556, 561-62 (9th Cir. 1987), citations and quotations omitted.  "Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." <u>Sheldon Appel Co. v. Albert & Oliker</u>, 47 Cal. 3d 863, 871 (Cal. 1989), citations omitted.

"It is not enough, however, merely to show that the proceeding was dismissed. The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge of crime against an innocent person. If the accused were actually convicted, the presumption of his guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge." <u>Jaffe v. Stone</u>, 18 Cal. 2d 146, 150 (Cal. 1941).  As this court has previously found in another case, a conviction overturned due to the exclusionary rule does not qualify as a favorable termination for the purposes of malicious prosecution: "Campbell was convicted by a jury, but the conviction was reversed due to application of the exclusionary rule for Fourth Amendment violations. This termination does not suggest innocence or that Campbell did not engage in misconduct. The exclusionary rule excludes relevant and probative evidence not because of a person's innocence, but rather to prevent violations of the Fourth Amendment. Since the reversal of Campbell's conviction does not show favorable termination, Campbell cannot meet the first element of malicious prosecution." <u>Campbell v. City of Bakersfield</u>, 2006 U.S. Dist. LEXIS 49930, *66-*67 (E.D. Cal. July 21, 2006), citations omitted.  Plaintiff's Section 1983 malicious prosecution claim fails as a matter of law.

**F. Defendant Hood**

In addition to the above discussed issues, Defendant Hood argues "officers Mora and

20

Mullins believed that Willis was on active parole, officer Mullins suspected that he was selling narcotics from this hotel room and had violated his parole. This information was communicated to Silvius and Hood, who then accompanied Mora and Mullins to perform the search. All of the officers, including Hood, therefore reasonably believed that their conduct was lawful when they entered Willis' hotel room. Moreover, Hood cannot be held liable for faulty information provided to him by the other officers concerning Willis' parole status." Doc. 237, Part 1, Hood Brief, at 7:26-8:5.  The Ninth Circuit has affirmed the denial of qualified immunity for Defendant Mora. Whether her reliance on the Parole Roster was reasonable must be determined by the jury. Defendant Hood suggests that he is entitled to qualified immunity because he relied on Defendants Mora's and Mullins's representations as opposed to the Parole Roster.  This is an argument that was not raised in previous rounds of summary adjudication.  As Plaintiff points out, Defendant Hood has not provided any evidence to support this assertion. Doc. 248, Plaintiff's Opposition, at 9:27-10:8.  Defendant Hood does not provide any evidence that describes what he was specifically told regarding Plaintiff's parole status.  Depending on the facts, it is certainly possible that Defendant Hood (and Defendant Silvius) may be entitled to qualified immunity for relying on Defendants Mullins and Mora. See Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005) ("During the briefing on the morning of the search, other officers provided appellees with Jamerson's parole status and last known address. We agree with the district court that the officers' reliance on this information was objectively reasonable").

## V. Conclusion

Defendants' motions for summary adjudication are GRANTED in part and DENIED in part.  Plaintiff's motion for reconsideration is DENIED.  The following issues and claims are ADJUDICATED:

1. Defendants' initial entry into the motel room violated Plaintiff's Fourth Amendment rights.  Qualified immunity can not be determined at this time.  Summary judgment on the unconstitutional entry Section 1983 claim is DENIED.

2. Defendants' seizure of Plaintiff while determining his parole status violated Plaintiff's

1    Fourth Amendment rights.  Qualified immunity applies.  Summary judgment on the

2    unconstitutional seizure Section 1983 claim is GRANTED in favor of Defendants.

3         3. The search of the briefcase based on Ms. Moye's consent did not violate Plaintiff's

4    constitutional rights.  Summary judgment on the unconstitutional search Section 1983 claim is

5    GRANTED in favor of Defendants.

6         4. Plaintiff's arrest based on the evidence found in the briefcase did not violate Plaintiff's

7    constitutional rights.  Summary judgment on the unconstitutional arrest Section 1983 claim is

8    GRANTED in favor of Defendants.

9         5. Defendants actions in supporting Plaintiff's criminal prosecution do not constitute

10   malicious prosecution.  Summary judgment on the malicious prosecution Section 1983 claim is

11   GRANTED in favor of Defendants.

12        The parties are directed to confer with each other and the courtroom deputy to set a

13   telephonic status conference to discuss when trial can be scheduled.

14

15   **IT IS SO ORDERED.**

16

17   **Dated:    August 12, 2011**                                            **CHIEF UNITED STATES DISTRICT JUDGE**

18

19

20

21

22

23

24

25

26

27

28