# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY WILLIS,<br><br>        Plaintiff<br><br>        v.<br><br>JOSEPH MULLINS, et al.,<br><br>        Defendants | CASE NO. 1:04-CV-6542 AWI BAM<br><br>ORDER RE: MOTION FOR SUMMARY JUDGEMENT<br><br>(Doc. 402) |

## I. History

Gary Willis ("Plaintiff") was a registered occupant of the E-Z 8 Motel in Bakersfield, CA on March 27, 1996. Police received reports of heavy traffic from that room and were informed it was registered under Plaintiff's name. The Defendants are four law enforcement officers from different departments who were sent to investigate: Bakersfield Police Officer Joseph Mullins, Bakersfield Police Officer Silvius, Kern County Deputy Sheriff Hood, and California State Parole Officer Diane Mora.[1] Defendant Mullins consulted a list of parolees generated by the California Department of Corrections and distributed to local police departments on a roughly monthly basis ("Parole Roster"). He presented the Parole Roster to Defendant Mora; she confirmed the Parole Roster indicated that Plaintiff was on parole (based on 1987 convictions and a 1994 parole revocation) and subject to search. After announcing their presence and entering the motel room, Defendants found two individuals inside, Plaintiff and third party Kathleen Moye. Also visible were a knife, a syringe, and a briefcase. Defendants announced the commencement of a parole search. Plaintiff informed Defendant Mullins he was no longer on parole and provided his parole discharge card. Defendant Mora left to seek telephone confirmation of Plaintiff's parole status. In

---

[1] Defendants Mullins and Silvius are employees of the City of Bakersfield. They are jointly represented by counsel. Defendant Hood and Defendant Mora each have separate counsel.

fact, Plaintiff had been discharged from parole nine months prior. While the call was taking place, Defendant Mullins detained Plaintiff outside the motel room while Defendants Silvius and Hood talked with Ms. Moye inside the room. Ms. Moye admitted to recently using methamphetamine, stated that she put a speed pipe in the briefcase, and consented to search of the briefcase. Defendant Mullins brought Plaintiff back into the room. Plaintiff objected to the search of the briefcase. Defendants Mullins, Silvius, and Hood opened the briefcase and found methamphetamine, speed pipes, syringes, set of scales, small plastic bags, spoons, and pay-owe sheets. At some point, Defendant Mora returned and informed Defendant Mullins that Plaintiff was not on parole. Defendants arrested Plaintiff and Ms. Moye.

Plaintiff made a motion to suppress evidence, which the California trial court denied. Based on evidence found within the motel room, Plaintiff was convicted of possession of methamphetamine for sale (Cal. Health & Safety Code § 11378) and possession of narcotics paraphernalia (Cal. Health & Safety Code § 11364). He ultimately served six years in state prison. On appeal, the Fifth District Court of Appeal found the entry unconstitutional and the good faith exception to the exclusionary rule inapplicable, but nonetheless affirmed the denial of suppression based on the finding that the officers had sufficient probable cause to search the briefcase based on Ms. Moye's statements to Defendant Silvius. The Fifth District's rationale was that the "freeze" in search was a reasonable response to the uncertainty concerning Plaintiff's parole status. People v. Willis, 71 Cal. App. 4th 530, 541 (Cal. Ct. App. 1999). On appeal, the attorney general conceded that the Fifth District"s rationale for denying the motion to suppress was erroneous. People v. Willis, 28 Cal. 4th 22, 25 (Cal. 2002). The California Supreme Court overturned Plaintiff's conviction on June 3, 2002, finding that evidence from the search must be suppressed as the good faith exception did not apply. People v. Willis, 28 Cal. 4th 22, 38 (Cal. 2002). Plaintiff was released on August 31, 2002.

Thereafter, Plaintiff filed a civil suit based on 42 U.S.C. § 1983. The procedural history of this case is elaborate. Before the trial, this court ordered summary adjudication on the following issues:

1. Defendants' initial entry into the motel room violated Plaintiff's Fourth

> Amendment rights. Qualified immunity can not be determined at this time. Summary judgment on the unconstitutional entry Section 1983 claim is DENIED.
>
> 2. Defendants' seizure of Plaintiff while determining his parole status violated Plaintiff's Fourth Amendment rights. Qualified immunity applies. Summary judgment on the unconstitutional seizure Section 1983 claim is GRANTED in favor of Defendants.
>
> 3. The search of the briefcase based on Ms. Moye's consent did not violate Plaintiff's constitutional rights. Summary judgment on the unconstitutional search Section 1983 claim is GRANTED in favor of Defendants.
>
> 4. Plaintiff's arrest based on the evidence found in the briefcase did not violate Plaintiff's constitutional rights. Summary judgment on the unconstitutional arrest Section 1983 claim is GRANTED in favor of Defendants.
>
> 5. Defendants actions in supporting Plaintiff's criminal prosecution do not constitute malicious prosecution. Summary judgment on the malicious prosecution Section 1983 claim is GRANTED in favor of Defendants.

Doc. 260, August 16, 2011 Order, 21:25-22:11. The case proceeded to trial on the first issue only and the jury found that each of the Defendants had an objectively reasonable belief that the Plaintiff was on parole when they entered the motel room. Doc. 362. Qualified immunity was granted to Defendants on that issue and judgment was entered in their favor. Docs. 360 and 364.

Plaintiff filed an appeal with the Ninth Circuit. Doc. 365. The Ninth Circuit affirmed in part and reversed in part the summary adjudications granted by this court, finding that summary judgment should not have been granted regarding the search of the briefcase. Doc. 391, Ninth Circuit Memorandum. After remand, the parties and Magistrate Judge Barbara McAuliffe held a status conference in which it was determined that additional motions would further the resolution of this case. Doc. 400. Of the five issues listed above, the only one remaining in this case is number three, whether the search of the briefcase based on Ms. Moye's consent violated Plaintiff's constitutional rights. Judgment has been granted in favor of Defendants on the other four issues.

Defendant Mora has made a new motion for summary judgment on the one remaining issue. Doc. 402. Plaintiffs oppose the motion. Doc. 411.

**II. Statement of Facts**

1. Willis is a former California state prisoner who was imprisoned in 1988 following his conviction in Kern County of lewd and lascivious acts with a child under 14 and threatening a

3

witness.

2. He paroled to Fresno County in 1994.

3. After being found guilty of parole violations and returning to prison, Willis was again discharged from prison on June 29, 1995.

4. On the morning of March 27, 1996, Willis registered at an Easy 8 Motel in Bakersfield, California.

5. Willis had a briefcase and clothing bag with him when he went to the motel.

6. Kathleen Moye entered the motel room with Willis that morning.

7. Willis then left the room shortly after Moye arrived.

8. Moye stayed behind in the room after Willis left.

9. When Willis left the room, he left behind his briefcase, which had a combination lock that he generally kept locked.

10. On the afternoon of March 27, 1996, Bakersfield Police Officer Mullins received a telephone call from an employee of the Easy 8 Motel, who told Officer Mullins that there was a large amount of telephone and foot traffic in and out of Room 221, which was registered to Willis.
    Disputed as to reports of foot traffic. No dispute as to reports of telephone traffic.

11. Officer Mullins knew the motel to be an inexpensive one located near a freeway in an area of Bakersfield known to have a significant level of methamphetamine activity.

4

Disputed as to the wording.

12. Officer Mullins checked Willis's name and driver's license number provided by the motel employee, and Willis's date of birth using the local criminal justice information system, and found that Willis had several prior arrests and convictions.

    Disputed as to records of prior arrests.  No dispute as to records of prior convictions.

13. Officer Mullins checked a roster of parolees in his office, it being the most current and up-to-date parole book he had.

14. The parole roster listed the names of parolees under supervision in Kern County by the Bakersfield Office of the Paroles & Community Services Division (PCSD) of the California Department of Corrections and Rehabilitation (CDCR).

15. A copy of the roster was provided to the Bakersfield Police Department once or twice a month so the police would not have to contact the parole office every time they wanted to determine whether a person was on parole.

16. The roster listed the parolee's name, CDCR number, the assigned parole agent, and the parolee's status, which could be "active," "TIR," "suspended," or "discharged."

17. A "TIR" entry meant that the parolee was active and that a request had been made to either transfer his parole from Kern County to another county or to transfer parole from another county to Kern.

18. Parole Agent Mora was in Officer Mullin's office at the time, so he asked her to look at the entry for Willis and tell him whether "TIR" meant that Willis was on active parole.

19. Agent Mora said that "TIR" indicated that Willis was an "active" parolee and that a transfer request had been made, but she did not know whether Fresno or Kern County had made the transfer investigation request in Willis's case.

20. Based on the roster entry, Agent Mora believed that Willis was on parole because, if the roster entry did not indicate that he had discharged, he was on active parole.

21. In Mora's experience, the parole roster contained reliable information regarding a parolee's status and had not been incorrect in her past experience; therefore, she did not feel it was necessary to further check on Willis's status with Willis's parole agent of record identified on the roster.

22. Mora had no direct knowledge of Willis's status, but relied on the information on the parole roster she was shown.

23. The roster was prepared by clerical staff in PCSD, and Agent Mora did not know how often staff updated it or what the mechanism was for updating the status of inmates on the list.

24. Clerical staff were responsible for correcting any known errors regarding a parolee's status.

25. Agent Mora, Officers Mullins and Silvius, and Kern County Sheriff's Deputy Hood went to the motel to conduct a parole search and arrived there around 10:00 p.m.
    Disputed as to the wording. Defendant Mora directed that the parole search take place.

26. Willis had returned to the motel room about 15 minutes before the officers arrived.

27. When the officers arrived at the motel, Officer Mullins checked motel records and confirmed that Willis was registered in Room 221.

28. Mora and the officers then went to Willis's room, where Deputy Hood knocked on the door.

29. Willis asked who was there and Hood replied, "It's Bill."

30. Willis responded that he did not know a "Bill."

31. Hood answered, "Bill from the police. Open the door, please."

32. Willis replied "It had better be," and then he opened the door about two inches.

33. When the door opened, Willis was wearing a knife and had his hand on its hilt.

34. Mullins saw the knife in a sheath on Willis's belt, a syringe on the dresser, and Moyes.

    Disputed. Mullins could not have seen anything in the room.

35. Officer Mullins announced that they were there for a parole search.

    Disputed. Defendants Mora and Hood were the ones who announced they were there to conduct a parole search.

36. Agent Mora and the officers then entered the room.

37. Officer Mullins handcuffed Willis.

38. Willis said that they could not conduct a parole search because Willis was not on parole.

39. He stated that he had a card in his pocket showing that he had discharged from parole on June 29, 1995.

|    |                                                                                                          |
| -: | :------------------------------------------------------------------------------------------------------- |
|  1 |                                                                                                          |
|  2 | 40. Officer Mullins took the card from Willis's wallet and said he thought it looked authentic.          |
|  3 |     Disputed as to wording. The card showed that Plaintiff had been discharged from parole |
|  4 | on June 29, 1995.                                                                                        |

40. Officer Mullins took the card from Willis's wallet and said he thought it looked authentic.

    Disputed as to wording. The card showed that Plaintiff had been discharged from parole on June 29, 1995.

41. Officer Mullins told Agent Mora that "I thought you said he was one of your people."

42. Agent Mora responded "I make mistakes."

43. Officer Mullins then asked Willis to step outside the room.

44. Willis, Officer Mullins, and Agent Mora then left the room, with Officer Mullins closing the door behind them.

    Disputed as to wording. Evidence only indicates that Defendant Mora left the room.

45. Officer Silvius and Deputy Hood remained in the motel room with Moye.

46. After stepping outside with Willis and Officer Mullins, Agent Mora left and went downstairs to either her car or the motel office and tried to contact someone to verify whether Willis had been discharged from parole.

47. Willis did not see Agent Mora again after she left to re-check his parole status.

48. Agent Mora tried unsuccessfully to reach Parole Agent Winings, who had been identified on the parole roster as Willis's agent of record.

49. She then telephoned Sacramento ID Warrants and was advised that Willis had been discharged from parole.

50. Agent Mora was away from Room 221 for about 15 or 30 minutes.

51. When she returned to the area, she informed Officer Mullins that Willis had been discharged from parole.

    Disputed. Defendant Mora re-entered the motel room.

52. Agent Mora then left before the briefcase was opened.

53. She did not search Willis's motel room or anything in it, did not detain Willis for parole violations, and did not authorize or participate in his arrest.

    Disputed. Defendant Mora had Plaintiff detained while she checked his parole status and the parole search ultimately lead to Plaintiff's arrest.

54. While Mullins and Willis were outside, and after Mora had left, Officer Silvius observed that Moye was exhibiting signs of being under the influence of methamphetamine.

55. Silvius asked Moye whether she was under the influence of methamphetamine. In response, Moye admitted that she was under the influence of methamphetamine and that she had just recently smoked it.

56. Moye then informed Silvius that she had placed her "speed pipe" in the briefcase. The briefcase was in his direct line of sight and did not require him to open any drawers, closet doors, or enter any other room to observe it.

57. Silvius understood Moye's acknowledgement that she had placed her "speed pipe" in the briefcase to mean that she either owned the briefcase or exercised control over it.

58. Because Silvius believed Moye either owned or exercised control over the briefcase, he asked her if he could retrieve the "speed pipe" from it. Moye agreed to this request. Before Silvius could open the briefcase, Mullins and Willis re-entered the motel room.

59. When Mullins re-entered the motel room, Silvius informed him that Moye admitted she was under the influence of methamphetamine and that Moye identified the briefcase as where she placed her "speed pipe."

60. Silvius then opened the briefcase on the belief that Moye had authority to consent to a search of it and, in fact, consented to the search.

    Disputed. Defendants Mullins and Silvius knew that the briefcase belonged to Plaintiff and that he refused consent to the search.

61. Mora had never returned to the motel room.

**III. Legal Standards**

    Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist

Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

### IV. Discussion

Defendant Mora argues "she did not participate in the search of the briefcase and did not set in motion any chain of events that she know or reasonably should have known would lead to the search of the briefcase." Doc. 402-1, Defendant's Brief, 2:1-3. Plaintiff argues that prior Ninth Circuit rulings in this case preclude summary judgment, Defendant Mora set in motion a chain of events as a supervisor, and Defendant was an integral participant to the briefcase search. Doc. 411, Plaintiff's Opposition.

**A. Law of the Case**

First, Plaintiff argues that prior Ninth Circuit rulings in this case do not allow summary judgment to be granted to Defendant Mora at this time: "the Ninth Circuit held on Mora's last [] appeal, from this court's denial of her last summary judgment motion, that 'questions of fact exist as to whether Agent Mora's actions were reasonable in accordance with Ninth Circuit case law.' Willis v. Mora, 314 Fed. Appx. 68, 69 (9th Cir. 2009)." Doc. 411, Plaintiff's Opposition, 2:8-11. Defendant Mora argues that no such impediment exists as the Ninth Circuit's ruling only dealt with the initial entry into the room and did not extend to the search of the briefcase. Doc. 414,

12

Defendant's Reply, 3:1-5.  The ruling in question only stated that "questions of fact exist as to whether Mora's mistake that Willis was on parole was reasonable." Doc. 195, Ninth Circuit Memorandum, at 2.  Defendant Mora is correct; the Ninth Circuit expressed no opinion about her liability for the search of the briefcase.  Law of the case does not compel a denial of this motion.

**B. Supervisor Liability**

Defendant Mora argues that "She did not search Willis's briefcase or direct others to conduct the search which was based on third-party consent and well after Mora suspended the initial parole search and left the scene. She was not present when the search was conducted and could not have known it was occurring since she was either in the motel office of in her car attempting to confirm the parole status of Willis when his briefcase was being searched." Doc. 402-1, Defendant's Brief, 7:2-3.[2]  Plaintiff asserts that Mora was a supervisor and that she "directed the search of both the room and the briefcase. She did not need to be contemporaneously present for every aspect of the search that she directed be made in order to be liable." Doc. 411, Plaintiff's Opposition, 2:25-27.  Specifically, she reasons that "Once plaintiff announced in front of Mora that he was not on parole, and Mullins retrieved the parole discharge card from plaintiff's wallet...Mora knowingly failed to terminate the search....Mora should not have walked off from the motel room while the search she was supervising was going on." Doc. 411, Plaintiff's Opposition, 4:1-16, citations omitted.

Both parties agree that "personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the

---

[2] This assertion is at odds with Defendant Mora's Statement of Undisputed Facts in which she asserts that she returned to the motel room to inform the other Defendants of Plaintiff's true parole status and then left before the briefcase was opened. Doc. 402-2, Defendant's Statement of Undisputed Facts, 6:4-22, Facts 46-52.  Plaintiff's deposition indicates that the briefcase was opened before Defendant Mora returned to the motel room. See Doc. 411-2, Willis Deposition, page 31:7-33:3.  This factual discrepancy does not appear to affect the analysis.  It is undisputed that Defendant Mora was not present when Ms. Moye was questioned, when Plaintiff was asked to consent to searching the briefcase, and when the briefcase was actually opened.

13

actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). It is well established that "There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendant Mora argues that she "could not reasonably foresee that, after she left, Moye would state that she had just recently smoked methamphetamine and that she had placed her 'speed pipe' into the briefcase. She also could not foresee that Silvius would ask Moye if he could retrieve the 'speed pipe' from the briefcase and that Moye would consent, still less that Moye's consent might be deemed invalid based on alleged conduct by Will that Mora was not privy to." Doc. 402-1, Defendant's Brief, 8:4-9. Plaintiff asserts that Defendant Mora is liable because she did not actively stop the other Defendants from taking any further action after Plaintiff presented his parole discharge card. Plaintiff argues "since the other defendants' conduct in searching plaintiff's briefcase was conduct that on a parole search an experienced supervisor [such as] parole officer Mora 'kn[e]w or reasonably should [have] knoe[n]' would occur -- it was foreseeable -- Mora may be held liable for it. Mora should not have walked off from the motel room while the search she was supervising was going on." Doc. 411, Plaintiff's Opposition, 4:11-16.[3]

Plaintiff relies principally on Larez v. Los Angeles, 946 F.2d 630 (9th Cir. 1991). In that case, police officers used excessive force in executing a search warrant. When the plaintiffs in that case lodged a complaint with the police department, Chief Gates signed a letter stating that the allegations could not be sustained. In key part, Chief Gates was found to be liable as a supervisor based on a theory of ratification. Larez v. Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) ("he condoned, ratified, and encouraged the excessive use of force....[He could] have disciplined the individual officers and [could] have established new procedures for averting the reoccurrence of similar excesses in the future. Yet, neither step was taken by Gates. Instead, he signed a letter informing Jessie Larez that none of his many complaints would be sustained, thereby ratifying the investigation into the Larezes' complaint"). Plaintiff agrees that the undisputed facts show

---

[3] To be clear, Plaintiff's claim of liability against Defendant Mora must be limited to the search of the briefcase. It has already been established that "Defendant [Mora's] further investigation to confirm Plaintiff's parole status did not violate Plaintiff's constitutional rights." Doc. 172, September 25, 2007 Order, 35:8-9.

14

Defendant Mora was not present when Ms. Moye was questioned and that she was not present when the briefcase was opened. Doc. 402-2, Defendant's Statement of Undisputed Facts, 6:20-21, and 7:14-15, Facts 52 and 61. Defendant Mora did not have the power to discipline the other Defendants after the fact or set out new procedures for obtaining consent and she did not formally approve of their actions in some way. There is no ratification of the decision to search the briefcase. Larez does not discuss what is considered reasonably foreseeable in the context of setting in motion a specific series of events that ultimately causes others to inflict a constitutional injury.

Defendant Mora cites to Estate of Lopez v. Torres, 2016 WL 429910 (S.D. Cal. Feb. 4, 2016) which deals with that issue directly. In that case, several police officers passed on information that a person to be arrested always carried a .25 caliber pistol on his person and had access to an AK-47 at his house to SWAT officers without verifying the information's accuracy. The information was incorrect. The SWAT team ultimately shot and killed that individual in the process of trying to arrest him. On the possibility of supervisor liability, "The critical question is whether it was reasonably foreseeable to a supervisor that the actions of particular subordinates would lead to the rights violations alleged to have occurred." Estate of Lopez v. Torres, 2016 WL 429910, *7 (S.D. Cal. Feb. 4, 2016). In that circumstance, the Southern District found the violation was not reasonably foreseeable:

> Plaintiffs contend that Defendants knew providing the information they did to SWAT would cause heightened tension, awareness, and fear, and would give rise to a likelihood of the immediate use of deadly force if Walb or other agents perceived a threat. Even assuming the truth of Plaintiffs' allegations, it is not reasonable to infer that Defendants knew or should have known that conveying that information to SWAT and requesting SWAT's engagement would result in a SWAT officer using excessive force....The Court is not prepared to set the precedent that the mere act of calling in SWAT makes it foreseeable that excessive force will be exercised.... Defendants could not have foreseen that highly trained SWAT officers allegedly would use excessive force in attempting to apprehend Lopez, even SWAT officers armed with the very information Defendants provided them with.

Estate of Lopez v. Torres, 2016 WL 429910, at *8 (S.D. Cal. Feb. 4, 2016). It is understood that when police officers interact with civilians, there is always the possibility of excessive force or search/arrest without sufficient cause. However, as the Southern District points out, that is not the intended or expected result. To impose supervisor liability based on the fact that a constitutional

violation is possible would be tantamount to imposing respondeat superior liability. This reasoning dovetails with the Southern District's alternate basis for reaching the same conclusion: "the actions of the SWAT unit were an intervening event... that intervenes to break the chain of proximate causality applies in section 1983 actions." Estate of Lopez v. Torres, 2016 WL 429910, at *8 (S.D. Cal. Feb. 4, 2016). The independent and unexpected actions of other police officers work to breach the chain of causation. For liability to attach, the supervisor must set in motion a series of events in which the constitutional injury is a logical result.

In the case at hand, there was nothing to suggest to Defendant Mora that a constitutional violation was at all likely. She left the other Defendants to secure the persons and the premises while she checked on Plaintiff's parole status. There was no expectation that anything wrong would happen. Defendant Mora could not have reasonably foreseen that the other Defendants might search a briefcase without consent.

**C. Integral Participant Liability**

Plaintiff argues that Defendant Mora is also liable as an integral participant to the briefcase search. "Section 1983 liability extends to those who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation. However, the 'integral participant' doctrine does not implicate government agents who are 'mere bystanders' to an unconstitutional search." Bravo v. City of Santa Maria, 665 F.3d 1076, 1089-90 (9th Cir. 2011), citations omitted. "[I]ntegral participation requires some fundamental involvement in the conduct that allegedly caused the violation. Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." Monteilh v. Cty. of L.A., 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011).

In this case, Defendant Mora was not in the room when the briefcase search took place. While the facts are not absolutely clear, the evidence indicates that she was trying to contact Sacramento ID Warrants in her car or the motel office at the time of the briefcase search. There is

16

no evidence to suggest that she knew or had reason to know of the plan to search the briefcase.

Plaintiff argues that Defendant Mora was necessarily an integral participant as she "authorized, led, and supervised" the overall operation. Doc. 411, Plaintiff's Opposition, 5:20. He cites to a Ninth Circuit case in which the court found no liability for "an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search in any fashion cannot be held liable" in contrast to two other officers who were "the 'primary agent'" and "most senior officer" on the scene. Hopkins v. Bonvicino, 573 F.3d 752, 770 and n.11 (9th Cir. 2009). Hopkins can not be read to support Plaintiff's assertion. Those two officers who lead the overall operation were the ones who physically made the warrantless entry. Hopkins v. Bonvicino, 573 F.3d 752, 761 (9th Cir. 2009). There was no question that they personally participated in the violation. Being in charge does not necessarily make an officer an integral participant. See Torres v. City of L.A., 548 F.3d 1197, 1206 (9th Cir. 2008) (no integral participation liability for officer in charge when "The evidence is undisputed that Detective Hickman was not present when Torres was arrested, and there is no evidence that Detective Hickman instructed the other detectives to arrest Torres or that any of those detectives consulted with her before making the arrest"). Again, Plaintiff's reasoning would result in automatic liability for a supervisor, i.e. respondeat superior. Defendant Mora's position is comparable to the officer in Hopkins who was interviewing a witness in the front yard, having nothing to do with the warrantless entry. There is no basis for integral participant liability.

### V. Order

Defendant Mora's motion for summary judgment is GRANTED. There are no remaining claims against Defendant Mora.

IT IS SO ORDERED.

Dated:   November 1, 2017            _____
                                         SENIOR DISTRICT JUDGE