# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARY WILLIS,** | **CASE NO. 1:04-CV-6542 AWI BAM** |
| Plaintiff | **ORDER RE: MOTIONS IN LIMINE** |
| v. | |
| **JOSEPH MULLINS, et al.,** | |
| Defendants | **(Docs. 432, 434, and 435)** |

## I. History

Gary Willis ("Plaintiff") was a registered occupant of the E-Z 8 Motel in Bakersfield, CA on March 27, 1996. Police received reports of heavy traffic from that room and were informed it was registered under Plaintiff's name. The Defendants were four law enforcement officers form different departments who were sent to investigate: Bakersfield Police Officer Joseph Mullins, Bakersfield Police Officer Silvius, Kern County Deputy Sheriff Hood, and California State Parole Officer Diane Mora.[1] Defendant Mullins consulted a list of parolees generated by the California Department of Corrections and distributed to local police departments on a roughly monthly basis. He presented this list to Officer Mora; she confirmed the list indicated that Plaintiff was on parole (based on 1987 convictions and a 1994 parole revocation) and subject to search.

After announcing their presence and entering the motel room, Defendants found two

---

[1] Defendants Mullins and Silvius are employees of the City of Bakersfield. They are jointly represented by counsel. Defendant Hood has separate counsel. Officer Mora was a defendant in this case, but all claims against her have been dismissed.

individuals inside, Plaintiff and Kathleen Moye. The facts are disputed as to what happened from this point until Plaintiff's and Ms. Moye's arrest. Plaintiff asserts that Defendants physically slammed him against a wall. Defendants assert that a knife, a syringe, and a briefcase were visible in the room. Defendants announced the commencement of a parole search. Plaintiff informed Defendant Mullins he was no longer on parole and provided his parole discharge card. In fact, Plaintiff served the balance of 12 months in prison starting in August 1994; he was no longer on parole in March 1996. Officer Mora left to seek telephone confirmation of Plaintiff's parole status. In fact, Plaintiff had been discharged from parole nine months prior. While the call was taking place, Defendant Mullins detained Plaintiff outside the motel room while Defendants Silvius and Hood talked with Ms. Moye inside the room. Ms. Moye admitted to using methamphetamine, stated that she put a speed pipe in the briefcase, and consented to search of the briefcase. Defendant Mullins brought Plaintiff back into the room. Defendants Mullins, Silvius, and Hood opened the briefcase and found methamphetamine, speed pipes, syringes, set of scales, small plastic bags, spoons, and pay-owe sheets. At some point, Officer Mora returned and informed Defendant Mullins that Plaintiff was not on parole. Defendants assert that Officer Mora did not return until after Defendants Mullins, Silvius, and Hood had opened the briefcase. Defendants arrested Plaintiff and Ms. Moye.

   Plaintiff made a motion to suppress evidence, which the California trial court denied. Based on evidence found within the motel room, Plaintiff was convicted of possession of methamphetamine for sale (Cal. Health & Safety Code § 11378) and possession of narcotics paraphernalia (Cal. Health & Safety Code § 11364). He ultimately served six years in state prison. On appeal, the Fifth District Court of Appeal found the entry unconstitutional and the good faith exception to the exclusionary rule inapplicable, but nonetheless affirmed the denial of suppression based on the finding that the officers had sufficient probable cause to search the briefcase based on Ms. Moye's statements to Defendant Silvius. The Fifth District's rationale was that the "freeze" in search was a reasonable response to the uncertainty concerning Plaintiff's parole status. People v. Willis, 71 Cal. App. 4th 530, 541 (Cal. Ct. App. 1999). On appeal, the attorney general conceded that the Fifth District's rationale for denying the motion to suppress was erroneous.

People v. Willis, 28 Cal. 4th 22, 25 (Cal. 2002). The California Supreme Court overturned Plaintiff's conviction on June 3, 2002, finding the entry unconstitutional and that the good faith exception did not apply. People v. Willis, 28 Cal. 4th 22, 38 (Cal. 2002). Plaintiff was released on August 31, 2002.

Thereafter, Plaintiff filed a civil suit based on a number of causes of action. The procedural history of this is elaborate. Before the first trial, this court ordered summary adjudication on the following issues:

> 1. Defendants' initial entry into the motel room violated Plaintiff's Fourth Amendment rights. Qualified immunity can not be determined at this time. Summary judgment on the unconstitutional entry Section 1983 claim is DENIED.
>
> 2. Defendants' seizure of Plaintiff while determining his parole status violated Plaintiff's Fourth Amendment rights. Qualified immunity applies. Summary judgment on the unconstitutional seizure Section 1983 claim is GRANTED in favor of Defendants.
>
> 3. The search of the briefcase based on Ms. Moye's consent did not violate Plaintiff's constitutional rights. Summary judgment on the unconstitutional search Section 1983 claim is GRANTED in favor of Defendants.
>
> 4. Plaintiff's arrest based on the evidence found in the briefcase did not violate Plaintiff's constitutional rights. Summary judgment on the unconstitutional arrest Section 1983 claim is GRANTED in favor of Defendants.
>
> 5. Defendants actions in supporting Plaintiff's criminal prosecution do not constitute malicious prosecution. Summary judgment on the malicious prosecution Section 1983 claim is GRANTED in favor of Defendants.

Doc. 260, August 16, 2011 Order, 21:25-22:11. The case proceeded to trial on the first issue only and the jury found that each of the Defendants had an objectively reasonable belief that the Plaintiff was on parole when they entered the motel room. Doc. 362. Qualified immunity was granted to Defendants on that issue and judgment was entered in their favor. Docs. 360 and 364.

Plaintiff filed an appeal with the Ninth Circuit. Doc. 365. The Ninth Circuit affirmed in part and reversed in part the summary adjudications granted by this court, finding that summary judgment should not have been granted regarding the search of the briefcase. Doc. 391, Ninth Circuit Memorandum. In key part, the Ninth Circuit stated that "a reasonable jury could determine that Willis was present at the time of the search, actively opposed the search, and had superior control over the briefcase." Doc. 391, at 3. Whether the search of the briefcase violated

3

Plaintiff's Fourth Amendment rights is the focus of the second trial.

On remand, the parties made additional substantive motions. Officer Mora made a motion for summary judgment arguing that she took no part in the search of the briefcase. Doc. 402. The motion was granted and all remaining claims against Officer Mora were adjudicated in her favor. Doc. 421. Defendants also made a motion to exclude any claim for damages resulting from Plaintiff's incarceration due to the non-applicability of the exclusionary rule to Section 1983 civil claims. Doc. 410. Defendants' motion was granted. Doc. 419.

Plaintiff has filed two motions in limine ("MIL"). Docs. 434 and 435. Defendants Silvius and Mullins have filed twelve MIL. Doc. 432. Defendant Hood joins in these MILs. Docs. 433 and 292. A hearing was held on February 25, 2019.

Of note, the parties made MILs before the first trial and the court issued a written order resolving them. Doc. 324. As part of his appeal, Plaintiff appealed some of the rulings; the Ninth Circuit upheld the challenged MIL rulings made in the first trial, finding that "Willis' prior sex-offender convictions were properly excluded before trial, and to the extent the district court left the door open to their admission at a later time, Willis suffered no harm as a result of the court's ruling because he did not testify at trial. Any alleged prejudice that Willis would have suffered had he testified is speculative at best. See Luce v. United States, 469 U.S. 38, 41-42 (1984). The district court properly held that Willis' 2010 felony conviction for escaping from custody was admissible for impeachment purposes under Federal Rule of Evidence 609(a)(1)(A)." Doc. 391, at 4. As the parties have brought some MILs in the second trial that are essentially the same as MILs brought in the first trial, the rulings on this second round of MILs will be identical unless there is reason for a change.

**II. Legal Standard**

Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). Fed. Rule Evid. 403 states generally that, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

4

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). The parties must abide by the court's rulings but may ask for reconsideration as trial progresses. "[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court. The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." United States v. Bensimon, 172 F.3d 1121, 1127 (9th Cir. 1999), citing Luce v. United States, 469 U.S. 38, 41-42 (1984).

**III. Discussion**

Plaintiff frames the key factual question to be decided as "1. Whether defendants obtained plaintiff's permission to break open and search plaintiff's briefcase." Doc. 428, 5:3-4. Plaintiff assert that Plaintiff was present at the time of the search, actively opposed the search, and had superior control over the briefcase. Additionally, at the hearing, Plaintiff asserted that Ms. Moye's consent to opening the briefcase was not voluntarily given and therefore ineffective.

Defendants frame the questions as "1. Whether Willis was present at the time of the briefcase search; 2. Whether Willis actively opposed the search; 3. Whether Willis had superior control over the briefcase; 4. Whether Kathleen Moye's consent to search the briefcase was effective." Doc. 428, 5:12-15. Additionally, Defendants assert that at the time the briefcase was open, they were under the mistaken but reasonable belief that Plaintiff was subject to a parole search condition. Doc. 444, 8:24-28. At the hearing, Defendants also asserted that Plaintiff actually consented to the opening of the briefcase at the time as he was trying to cooperate to minimize any criminal consequences.

These are all factual issues that were not covered in the first trial. The parties have presented wide ranging legal theories in this trial. These various arguments constitute the bases relied upon when evaluating relevance. At the hearing, it was determined that the trial will

proceed in three phases. The first phase will consist of underlying liability. If the jury finds in favor of Plaintiff, the second phase will consist of liability damage amounts and punitive damages liability. If the jury finds that punitive damages are warranted in this case, the third phase will concern punitive damage amounts.

**A. Plaintiff's MIL**

> 1. To exclude from trial any evidence of or reference to Plaintiff's criminal convictions, none of which are related to the incident that is the subject of this action.
>
> 2. To exclude from trial any and evidence of or reference to the pre- and post-incident criminal convictions and arrests, the sex offender registration requirement, the terms and conditions of Plaintiff's parole, and the CDCR documents relating to Plaintiff's 1994 parole revocation.

These MILs are similar to ones Plaintiff raised before the first trial. Again, the convictions at issue are: (1) a 1983 conviction for assault with a deadly weapon under Cal. Penal Code § 245; (2) two 1987 convictions under Cal. Penal Code § 288(b), lewd and lascivious conduct with person under fourteen years old, and Cal. Penal Code § 136.1(c)(1), conduct accompanied by force or threat of force; (3) two 2007 convictions under Ariz. Rev. Stat. § 13-3821 under which plaintiff was required to register as a sex offender based upon his two 1987 convictions and Ariz. Rev. Stat. § 13-3824, failure to register; and (4) a 2010 conviction under Ariz. Rev. Stat § 13-2503A.2, escape in the second degree. Plaintiff was subject to a term of parole as a result of the 1987 convictions. The prior ruling on the corresponding MILs was:

> Plaintiff's first MIL is granted in part and denied in part. The 1983 and 2007 convictions are excluded. The fact that Plaintiff was convicted in 1987 (but not the nature of the offence) may be presented to explain Plaintiff's parole status. The 2010 conviction may be presented as impeachment.
> Plaintiff's second MIL is granted in part and denied in part. Plaintiff's sex offender status and parole revocation are irrelevant in the qualified immunity phase of the trial. They may be presented in the punitive damages phase of the trial. The terms and conditions of Plaintiff's parole may be presented in all phases of trial.

Doc. 324, 12:2-9. In this trial, the facts to be explored center on the Defendants' search of the briefcase rather than their decision to enter the motel room based upon their mistaken belief that Plaintiff was a parolee subject to a search condition. However, Defendants still assert that their

initial mistaken belief that Plaintiff was subject to a search condition provides them with qualified immunity for their search of the briefcase. Thus, basic information about the terms and conditions of Plaintiff's parole, essentially the bare factual background that explains why there was a question about whether Plaintiff was still on parole, remains relevant in this second trial.

Plaintiff argues that this ruling on the MILs in the first trial regarding the admissibility of past convictions was mistaken. In part, Plaintiff was warned he could open the door to evidence of additional convictions and the nature of those convictions if he asserted certain damages based on loss of reputation or mental distress damages. Doc. 324, 9:3-17. Plaintiff notes correctly, that the legal authority for those conclusions came from circuit and district court cases from outside the Ninth Circuit. Plaintiff now cites to a relevant District of Nevada case, Prestianni v. BZClarity/Phantom Sub, LLC, 2010 WL 11579012 (D. Nev. Jan. 21, 2010). In Prestianni, the plaintiff was asserting emotional distress damages for sexual harassment in a civil employment discrimination case. In that case, the defendants tried to use plaintiff's prior conviction of a sex offense "to impeach Plaintiff's testimony that the sole cause of his emotional distress was the alleged sexual harassment. Defendants suggest that Plaintiff's testimony shows that he experienced emotional distress from his prior dealings with the criminal system." Id. at *4. The court excluded the evidence of the conviction, noting that the defendants' argument was "extremely tenuous" and that "rape and sexual assault convictions are among the most prejudicial types of information a jury could learn about the plaintiff in a civil suit." Id., citations omitted. Notwithstanding this general exclusion, the court recognized that the plaintiff could open the door to this evidence: "If Plaintiff makes specific mention of his previous conviction, Defendants should be permitted to introduce evidence regarding that conviction." Id.

In response Defendants argue that "Prior criminal convictions are relevant to the issue of damages and mental anguish." Doc. 444, 6:16. Defendants point to a number of Section 1983 cases in which courts have permitted evidence of other police incidents in evaluating mental distress damages. In one case, the plaintiff sought mental distress for wrongfully being admitted by the police to a detox facility. Halvorsen v. Baird, 146 F.3d 680 (9th Cir. 1998). The Ninth Circuit approved of the trial court's allowing evidence of the plaintiff's other instances of being

7

1  admitted to the detox facility (both prior to and after the incident in question: "The evidence of
2  Halvorsen's prior admission to the detox facility was highly relevant to his damages claim. The
3  jury could reasonably conclude that his mental distress the second time he was so confined would
4  be far less than the first time. The admission subsequent to the one at issue was relevant to show
5  that some of Halvorsen's continuing mental distress might be caused by that subsequent
6  admission. If a person's damages are 'I was extremely upset by the event,' then evidence of
7  similar events before and after the one at issue may support an inference that part or all the distress
8  was attributable to the other events." Id. at 686.  When a plaintiff asserts that a police interaction
9  caused mental distress, a defendant is allowed to bring up other instances of plaintiff-police
10 interaction as potential independent sources of that mental distress. See Morris v. Long, 2012 U.S.
11 Dist. LEXIS 59413, *9 (E.D. Cal. Apr. 27, 2012) ("the evidence shows that Plaintiff had been
12 arrested on multiple occasions before and after the incident some of which included physical
13 confrontations with law enforcement, and as such, this evidence would make Plaintiff's claims
14 that the force applied by Defendant caused Plaintiff humiliation, emotional distress, and/or mental
15 anguish less probable"); Brooks v. Haggett, 2010 U.S. Dist. LEXIS 115472, *24 (N.D. Cal. Oct.
16 21, 2010) ("Defendant maintains that Plaintiff should not be allowed to blame his anxiety on the
17 alleged interaction with Defendant because Plaintiff's other interactions with the police were
18 significant contributing factors....the Court agrees with Defendant").

19        This case law, taken as a whole, supports the ruling from the first trial.  Depending on the
20 kinds of damages arguments made, Plaintiff could open the door for additional information about
21 his criminal history.  Plaintiff has included proposed jury instructions for emotional distress
22 damages, but it is not altogether clear what Plaintiff's argument for that will be.  The Central
23 District has pointed out that it may only be the fact of incarceration that is relevant for damages
24 rather than the conviction. Green v. Baca, 226 F.R.D. 624, 657 (C.D. Cal. 2005) ("The nature of
25 the convictions that led to the earlier incarcerations, however, is not relevant to damages, however,
26 and would have a prejudicial impact that would outweigh any probative value that exists.
27 Accordingly, as respects the issue of damages for emotional distress, defendant may introduce
28 evidence of the number and duration of plaintiff's prior periods of incarceration"). As history of

sexual offences is extremely prejudicial, the court would be hesitant to allow such evidence to be presented by Defendants unless that aspect of Plaintiff's past can be shown to be especially probative of damages. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of ...unfair prejudice").

With the understanding that Plaintiff could open the door to evidence of additional convictions, Plaintiff's MILs are granted in part and denied in part. This court largely reiterates the ruling from the last MIL order. The 1983 and 2007 convictions are excluded. The fact that Plaintiff was convicted in 1987 (but not the nature of the offence) may be presented to explain Plaintiff's parole status. The 2010 conviction may be presented as impeachment. Plaintiff's sex offender status and parole revocation are irrelevant in first two phases of the trial. They may be presented in the punitive damage amounts phase of the trial provided Defendants can show they had prior knowledge of that information. The relevant terms and conditions of Plaintiff's parole may be presented in all phases of trial.

**C. Defendants' MIL**

1. Motion to Exclude Any Evidence/Testimony Related to Plaintiff's Arrest, Prosecution, Conviction and Incarceration.

This was an MIL that was raised in the first trial. As before, this MIL is granted.

2. Motion to Exclude Any Evidence/Testimony That the Defendants Violated Plaintiff's Fourth Amendment Rights by Entering Motel Room.

Plaintiff opposes this MIL. One of Defendants' arguments is that Defendant Silvius "believed he had the right to open the briefcase not only because Ms. Moye had given him consent but also because Mr. Willis was on parole and subject to a search condition." Doc. 444, 8:24-26. Insofar as Defendants are pursuing a qualified immunity argument based on their mistaken understanding that Plaintiff was on parole, a full explanation of how Plaintiff's Fourth Amendment rights were violated under that theory should be explained to the jury. This MIL is denied.

3. Motion to Exclude Any Evidence/Testimony That the Ninth Circuit Reversed this Court's Ruling Regarding the Opening of the Briefcase.

Plaintiff states he "cannot imagine any basis for citing to the jury, the Ninth Circuit's decision in this case." Doc. 439, 6:24-25. This MIL is granted.

4. Motion to Exclude Plaintiff's Exhibits 2 through 15.

Defendants oppose the exclusion of these documents for different reasons.

Exhibits 2, 3, and 10 are a declaration, deposition testimony, and criminal trial testimony of Plaintiff Gary Willis. Defendants sought to exclude these materials in the first trial. They were ruled to be hearsay and excluded except for the purpose of impeachment or rehabilitation under Federal Rule Evidence 801(d)(1). Doc. 324, 13:22-14:24. Now, Plaintiff asks that the declaration be admitted as a recorded recollection under Federal Rule Evidence 803(5). Doc. 439, 7:8-20. That provision requires that the record "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). Plaintiff does not assert that he no longer has a sufficient memory of the incident. Instead, Plaintiff states that "Although plaintiff expects to testify at trial, extraordinary circumstances unknown at this time may prevent his presence at the trial, so that the court should defer ruling on this matter. Plaintiff does not reside in California, and defendants took his deposition and were free to ask all questions." Doc. 439, 7:21-25. Plaintiff cites Federal Rule of Civil Procedure 32 and Federal Rule Evidence 804 for the proposition that use of deposition and trial testimony would per permissible if a witness is unavailable. Doc. 439, 7:25-6. However, a person is not unavailable "if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying." Fed. R. Evid. 804(a); see also Fed. R. Civ. Proc. 32(a)(4)(B) ("unless it appears that the witness's absence was procured by the party offering the deposition"). As was covered in the first round of MILs, a party may not procure their own absence in order to admit prior testimony.

See Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 995 (1st Cir. 1992). Additionally, courts require the declarant to be a witness at trial to permit a recorded recollection to be admitted. See Estate of Konell v. Allied Prop. & Cas. Ins. Co., 2013 U.S. Dist. LEXIS 81832, at *4 (D. Or. June 11, 2013) (declining to admit letter as recorded recollection because the declarant was unavailable, instead admitting it under the residual exception to hearsay, Rule 807), citing Parker v. Reda, 327 F.3d 211, 215 (2nd Cir. 2003) ("Evidence of recorded recollection, on the other hand, is inadmissible unless a witness, who once had knowledge of what the record contains, testifies") and United States v. Porter, 986 F.2d 1014, 1017 (6th Cir. 1993) ("While Rule 803(5) treats recorded recollection as an exception to the hearsay rule, the hearsay is not of a particularly unreliable genre. This is because the out-of-court declarant is actually on the witness stand and subject to evaluation by the finder of fact, in this case the jury"); see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1190, 1229 (E.D. Pa. 1980) ("We think it plain that in the contemplation of its drafters and of Congress, Rule 803(5) applies only to the recorded recollection of a witness who is present and testifies, and not to the recorded recollection of an absent declarant"); Steinberg v. Obstetrics-Gynecological & Infertility Grp., P.C., 260 F. Supp. 2d 492, 495 (D. Conn. 2003). This requirement comports with the caveat that "the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." Fed. R. Evid. 803(5). As in the first trial, Exhibits 2, 3, and 10 are excluded as hearsay except for the purpose of impeachment or rehabilitation.

Exhibits 4 and 5 are the deposition testimony and declaration of Officer Mora, who has been dismissed from this case. Unfortunately, she has passed away. Defendants argue that she was not present at the time of the opening of the briefcase and so her statements are not relevant to this second trial. Doc. 432, 12:18-22. Defendants assert that Officer Mora informed Defendants Mullins, Silvius, and Hood that Plaintiff was not on parole after they had opened the briefcase. Any statement by Officer Mora concerning the timing of her return to the motel room is relevant. Objections based on relevance can be made during trial; these MILs are reserved.

Exhibits 6, 7, 8, 9, 12, and 13 are declarations, deposition testimonies, and criminal trial testimonies of Defendants Mullins and Silvius. Defendants state that "To the extent that the

Plaintiff seeks to introduce testimony on issues beyond the opening of the briefcase, which is clearly the case based on the designations, such evidence should be excluded pursuant to Fed. R. Civ. P. 403." Doc. 432, 12:24-26. Plaintiff responds that these materials may be used if Defendants Mullins and Silvius become unavailable or testify that they no longer recall the events at issue. Doc. 439, 10:9-23. Again, the parties are arguing legal theories that necessitate exploration of facts beyond the exact moment of opening the briefcase (Ms. Moye's consent was not voluntary, Defendants still believed Plaintiff was subject to a parole search because Officer Mora had not yet returned by the time they opened the briefcase). Objections based on relevance can be made during trial; these MILs are reserved.

Exhibit 11 is the criminal trial testimony of Ms. Moye, who has also passed away. Defendants object to this exhibit as hearsay. Doc. 432, 12:27-28. Plaintiff seeks to have them admitted as testimony of an unavailable declarant. An exception to hearsay is "Testimony that: (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). Regarding requirement (B), Plaintiff has not establish how either the criminal prosecution or defense in Plaintiff's criminal case could be considered a predecessor in interest to Defendants in this civil case. Further, there was no "similar motive" to explore the question of consent or objection to opening the briefcase at the criminal trial; From what can be gathered from the record, Plaintiff's motion to suppress had been denied prior to the trial. In such a circumstance, testimony during a criminal trial does not meet the requirements of Rule 804(b)(1) when a party tries to use it in a Section 1983 civil case against police officers. See Hannah v. Overland, 795 F.2d 1385, 1390 (8th Cir. 1986). Exhibit 11 is excluded.

Exhibit 14 is the Board of Prison Terms and California Department of Corrections and Rehabilitation documents relating to Plaintiff's 1995 discharge date from prison and 1996 incarceration and discharge date. Defendants assert this information is irrelevant to the search of the briefcase. Doc. 432, 13:1-2. Plaintiff does not address this request. Again, as Defendants are

asserting qualified immunity due to the mistaken belief that Plaintiff was still on parole, this information is relevant. This MIL is denied.

Exhibit 15 is the California Supreme Court opinion of People v. Willis, 28 Cal. 4th 22 (2002). This was an MIL that was raised in the first trial. As before, this MIL is granted; exhibit 15 is excluded.

5. Motion to Exclude Any Witness Not Previously Disclosed in Disclosures Pursuant to Federal Rules of Civil Procedure or in Discovery Responses.

The pretrial order (Doc. 428) contains each side's list of witnesses. This was an MIL that was raised in the first trial. As before, this MIL is granted.

6. Motion to Exclude Non-Party Witnesses from the Courtroom.

Plaintiff does not oppose this MIL; it is granted.

7. Motion to Exclude Any Golden Rule Argument.

Plaintiff does not oppose this MIL; it is granted.

8. Motion to Exclude Any Argument or Evidence Concerning Settlement Negotiations.

Plaintiff does not oppose this MIL; it is granted.

9. Motion to Exclude Any Reference, Argument, or Evidence Pertaining to Insurance or Indemnification.

Plaintiff does not oppose this MIL with the caveat that Defendants not be permitted to introduce evidence or suggestion of inability to pay. Defendants' MIL is granted with that understanding.

10. Motion to Exclude Mention of Any Force Purportedly Used on Plaintiff by Defendants.

This was an MIL raised in the prior trial. Plaintiff did not oppose the MIL and it was

1  granted. Doc. 324, 17:23-24.  This time, Plaintiffs do oppose the MIL.

2  Plaintiff is expected to testify that he was "slammed backwards against a wall by police." Doc. 432, 16:11.  This action allegedly occurred after Defendants entered the motel room and so would not be relevant to the legality of their initial entry.  There is no claim of excessive force as a basis for a Section 1983 claim in this case.  However, force does play into the issue of whether Plaintiff consented or objected to the search of the briefcase.  Under Ninth Circuit case law, factors that inform whether consent was freely and voluntarily given include "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained." United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000).  "Voluntariness is a question of fact to be determined from all the surrounding circumstances. When viewing the surrounding circumstances, there is no single controlling criterion." United States v. Kaplan, 895 F.2d 618, 622 (9th Cir. 1990), citations omitted.  Further, it is settled law in the Ninth Circuit that "In a criminal case, the government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. In a civil case under 42 U.S.C. § 1983, however, the plaintiff carries the ultimate burden of establishing each element of his or her claim, including lack of consent." Pavao v. Pagay, 307 F.3d 915, 918-19 (9th Cir. 2002).  As Defendants have asserted that Plaintiff himself consented to the search of the briefcase, their use of force against him may be relevant. This MIL is denied.

11. Motion to Exclude Any Reference, Argument, or Evidence Pertaining to Prior or Subsequent Claims or Lawsuits.

Plaintiff does not oppose this MIL; it is granted.

12. Motion to Exclude Any Mention to Evidence or Argument Regarding a Recent ACLU Report or that the City of Bakersfield is Accused of Violation of Constitutional Rights.

Plaintiff does not oppose this MIL; it is granted.

## IV. Order

The motions in limine are granted and denied as explained above.

The beginning of trial is reset from Monday, March 11, 2019 to Tuesday, March 12, 2019, at 8:30 AM in courtroom 2.

The trial will proceed in three phases. The first phase will consist of liability. The second phase will consist of liability damage amounts and whether punitive damages are warranted. The third phase will consist of punitive damage amounts.

IT IS SO ORDERED.

Dated: __March 11, 2019__  _____
                                          SENIOR DISTRICT JUDGE